J-S64042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LEONARD O. RILEY, JR | |
| Appellant | No. 1972 MDA 2016 |

Appeal from the Judgment of Sentence January 12, 2016
In the Court of Common Pleas of Dauphin County Criminal Division at No(s):
CP-22-CR-0005291-2014

BEFORE: PANELLA, J., SHOGAN, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.: **FILED DECEMBER 14, 2017**

Appellant, Leonard O. Riley, Jr., appeals *nunc pro tunc* from the judgment of sentence to serve an aggregate thirty-nine to seventy-eight months' imprisonment for delivery of a controlled substance[1] and criminal use of a communication facility.[2] Appellant claims that the evidence was insufficient to sustain the conviction for criminal use of a communication facility, that the verdicts were against the weight of the evidence, and that the sentence was manifestly excessive. We affirm.

The trial court summarized the evidence against Appellant as follows:

> On May 6, 2014, Harrisburg City Police Detective Sean
> Cornick served as the lead detective in a drug investigation

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 7512(a).

of a person known as "Mac".  In the investigation, Detective Cornick utilized a confidential informant ("CI") who previously assisted in investigations which resulted in convictions.

On the afternoon of May 6, 2014, the CI placed a call to Mac in the presence of Detective Cornick. Detective Cornick heard a male voice on the other end of the conversation. The CI arranged to meet Mac at a customary meeting place, Woodbine and Logan Streets in Harrisburg.  The CI ordered ten packs of heroin. After the phone call, Detective Cornick searched the CI's person and vehicle to ensure that the CI did not possess drugs, drug paraphernalia or money.  The CI possessed only a cell phone.  Detective Cornick provided the CI with $70 in Dauphin County Drug Task Force buy money.

Harrisburg City Police Detective Nicholas Licata assisted with the investigation.  Detective Licata and [Office of the Attorney General] Agent Henry Giammarco set up surveillance in an unmarked vehicle near Woodbine and Logan Streets.

Driving his own vehicle, the CI followed Detective Cornick to that location and parked south of Cornick's vehicle.  They remained in communication. The CI informed Detective Cornick that the target was en route to the location driving a black 300 Chrysler.  The black Chrysler arrived at the area and parked north of Detective Cornick's vehicle.  An individual exited the Chrysler and walked south toward Woodbine Street.  At trial, Detective Cornick identified the individual as [Appellant].

Detective Licata testified regarding his surveillance. Detective Licata saw a black male exit the front passenger seat of the Chrysler and toward the detectives' vehicle.  At trial, Detective Licata also identified that person as [Appellant].

Both detectives testified that as [Appellant] walked south on Woodbine Street, he observed Detective Cornick.  Detective Cornick drove away in order to avoid further eye contact with [Appellant]. [Appellant] continuously watched as Detective Cornick drove away. [Appellant] returned to the

black Chrysler and also drove away. Up to this point, no one had approached the CI's vehicle and the CI did not exit his vehicle.

Within minutes, the black Chrysler returned and parked behind the CI's vehicle. The CI left his vehicle and entered the rear passenger seat of the Chrysler.[3] . . . After the CI exited, [Appellant] reached for something in the back seat where the CI had been seated.

Detective Licata maintained constant surveillance of the CI after he returned to his vehicle.

Following the transaction, Detective Cornick instructed the CI to follow him to a pre-established secure meeting place. The CI followed. At the meeting place, Detective Cornick repeated the search as conducted before the transaction. The CI handed Detective Cornick ten green glassine bags. The CI did not possess any additional drugs or paraphernalia and did not have the $70 of Drug Task Force money. Pennsylvania State Police Laboratory crime lab testing determined that the bags contained a total of .28 grams of heroin. (N.T. pp. 23-24).

Several weeks later, Detective Licata arrested [Appellant] in connection with another investigation. In the course of that arrest, Detective Licata recovered a phone from [Appellant] which contained a series of text messages inquiring about the other person's location at Logan Street and the prices for packages of heroin[]. The text message referred to [Appellant]'s street names of "Mac" or "Omizz". The number of the phone seized from [Appellant] at that arrest contained messages which indicated they were from "Omizz" at his new number.

---

[3] The trial court further stated that after the CI entered the car, "[Appellant] joined the CI in the rear passenger seat. The CI and [Appellant] remained there for 30-60 seconds." Trial Ct. Op., 3/11/17 at 4. However, as discussed below that finding is not supported in the record. *See* N.T., 1/12/16, at 37 (indicating that Appellant exited the vehicle from the front passenger seat **after** the CI got out, and then went to the back seat and reached toward the area where the CI had been).

Trial Ct. Op. at 2-4 (record citations omitted).

On January 12, 2016, Appellant proceeded to a nonjury trial at which the trial court found him guilty of delivery of a controlled substance and criminal use of a communication facility. Appellant waived the preparation of a presentence investigation report, and the court immediately sentenced Appellant to consecutive sentences of twenty-seven to fifty-four months' imprisonment for the delivery and twelve to twenty-four months' for the use of communication facility. The trial court directed that the sentences run consecutive to a previously imposed sentence.[4] On January 21, 2016, Appellant's counsel filed a motion to withdraw from representation indicating that Appellant intended to proceed *pro se*, which the trial court granted on January 25, 2016. Meanwhile, Appellant filed several *pro se* post-sentence motions. The trial court denied the *pro se* post-sentence motions on February 3, 2016. That same day, Appellant filed a *pro se* notice of appeal.

Appellant obtained new counsel, who subsequently discontinued Appellant's *pro se* appeal and filed a Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, petition seeking reinstatement of his direct appeal rights. On September 27, 2016, the PCRA court granted Appellant's petition.

---

[4] On the day before trial in the instant case, Appellant was convicted and sentenced in a separate case docketed in the trial court as "5649-2014." Appellant's Brief at 9 n.2. According to Appellant, he was sentenced to one and one-half to three years' imprisonment, and he took a separate appeal at 294 MDA 2017. *Id.* The current record only contains passing reference to 5649-2014.

On October 6, 2016, Appellant filed post-sentence motions *nunc pro tunc* challenging the weight of the evidence and the discretionary aspects of the sentence. The trial court denied the post-sentence motions on November 10, 2016. Appellant timely appealed and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement. This appeal followed.

Appellant presents the following questions for review:

I. Was not the evidence insufficient to sustain a conviction for the offense defined at 18 Pa.C.S. § 7512 (criminal use of a communication facility)?

II. Did not the [trial] court abuse its discretion by failing to grant [Appellant] a new trial on the basis that the guilty verdicts were against the weight of the evidence?

III. Was the imposition of an aggregate sentence of three years, three months, to six years, six months, clearly unreasonable, so manifestly excessive as to constitute an abuse of discretion, and inconsistent with the protection of the public, the gravity of the offenses, and [Appellant]'s rehabilitative needs where the court imposed consecutive jail sentences[?]

Appellant's Brief at 7 (capitalization omitted).

Appellant first claims that the evidence was insufficient to prove he used a communication facility to engage in a drug transaction. He notes that the cellular phone seized from him at the time of the arrest bore a different number than the one used by CI to contact "Mac" and arrange the transaction on May 6, 2014. He emphasizes that the Commonwealth "offered no proof that [he] was the owner of a cell phone account with the particular number . . . that the CI called on May 6, 2014" or that any other person called him at

that number. Appellant's Brief at 24. Moreover, he notes that Corporal Cornick only "gave a threadbare description of the actual telephone communication between the CI and 'Mac' on May 6, 2014." ***Id.*** No relief is due.

Our review of Appellant's challenge to the sufficiency of the evidence is governed by the following precepts:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Storey***, 167 A.3d 750, 757 (Pa. Super. 2017) (citation omitted).

Section 7512 of the Crimes Codes defines criminal use of communication facility, in part, as follows:

> **(a) Offense defined.--**A person commits a felony of the third degree if that person uses a communication facility to

- 6 -

commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. . . . .

18 Pa.C.S. § 7512(a) (footnote omitted). The offense requires the Commonwealth to prove "(1) [the defendant] knowingly and intentionally used a communication facility; (2) [the defendant] knowingly, intentionally, or recklessly facilitated an underlying felony; and (3) the underlying felony occurred." *Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004)

Instantly, the record, when read in a light most favorable to the Commonwealth, contains adequate circumstantial evidence that Appellant used a communication facility to facilitate a drug transaction. On May 6, 2014, the CI indicated he was calling "Mac" to purchase heroin and dialed a number. Corporal Cornick overheard what he believed was a male voice talking to the CI. "Mac" was known to operate a black Chrysler 300 with temporary tags. Corporal Cornick testified that he instructed the CI to keep his normal routine when dealing with "Mac." The CI informed the officer that the transaction was to take place at the intersection of Logan and Woodbine Streets. Appellant appeared at the designated meeting place as a passenger in a black Chrysler 300 with temporary tags. The CI, who had been searched for contraband before meeting with Appellant, returned with ten packets of heroin after meeting with Appellant.

Less than a month later, at the time of his arrest on June 4, 2014, Appellant was in possession of a cellphone. Although that phone's number was different than the number used by the CI to contact "Mac," a search of the phone indicated that Appellant changed phone numbers and using his known nickname of "Omizz," alerted his contacts of his new phone number on May 24, 2014. The cellphone also contained outgoing text messages referring to the sender as "Mac" and arranging meetings at the intersection of Logan and Woodbine.

Thus, although there was no direct evidence that the CI was in contact with Appellant to arrange the May 6, 2014 sale, the circumstantial evidence established that Appellant was the individual identified by the CI as "Mac" on May 6, 2014. Moreover, because the CI contacted "Mac" and Appellant appeared at the designated meeting place, the Commonwealth adduced sufficient circumstantial proof that the Appellant used a communication facility to facilitate that transaction. *See Storey*, 167 A.3d at 757. Accordingly, Appellant's first claim fails.

Appellant next claims that the verdicts were against the weight of the evidence. In support, Appellant sets forth four overlapping arguments. First, Appellant emphasizes that there was inconsistent testimony regarding the delivery. Appellant's Brief at 28. He notes Detective Licata testified that the exchange occurred in Appellant's vehicle, while Corporal Cornick believed the exchange occurred in the CI's vehicle, and there was no video recording of the

exchange despite Corporal Cornick's belief that video surveillance was conducted. *Id.*

Second, Appellant notes there was no direct evidence of an exchange between him and the CI. He observes that the CI did not testify, none of the surveilling officers could see a hand-to-hand transaction through the tinted windows of Appellant's vehicle, and the CI was not equipped with audio recording capabilities. *Id.* at 27-28.

Third, Appellant challenges the quality of the circumstantial evidence supporting the allegation he personally delivered the subject heroin. He emphasizes that the search of the CI's clothing and vehicle before and after the search was perfunctory and did not exclude the possibility that the CI hid contraband before the transaction or kept the pre-recorded buy money after the transaction. *Id.* at 27. He further notes that none of the pre-recorded buy money was recovered when he was arrested nearly one month after the controlled purchase. *Id.* Additionally, Appellant observes that a third person, the driver of Appellant's vehicle, was in the vehicle at the time of the transaction. *Id.* at 13. He also observes there was no evidence introduced to show he owned the cellular phone contacted by the CI. *Id.* at 28.

Fourth, Appellant contends that the text messages recovered from the cellphone found in his possession at the time of his arrest were wholly unreliable, because the Commonwealth did not establish he authored the text

messages, and his counsel failed to object to the authenticity of the messages. For the reasons that follow, we conclude Appellant's claim lacks merit.

The principles governing our review of a challenge to the weight of the evidence are well settled.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial

based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations omitted).

The trial court here opined that the evidence against Appellant was overwhelming: to /and during ;

> We found that [Appellant] delivered a controlled substance based upon the following credible evidence: police gave the CI Task Force funds; the CI called [Appellant] to . . . arrange the purchase of ten bags of heroin at Woodbine and Logan Streets; [Appellant] arrived and appeared concerned by the presence of the detective's vehicle and drove away; [Appellant] returned to complete the transaction with the CI in the back seat of [Appellant]'s vehicle; detectives maintained constant surveillance of the CI; no one other than [Appellant] interacted with the CI during that time after the transaction[;] the CI had no funds and possessed ten bags of heroin.
>
> ***
>
> [Appellant] challenges this conclusion solely upon the lack of observation of a hand-to hand exchange. The veracity of our finding is undiminished by the lack of such evidence in

- 11 -

> that the Commonwealth may sustain its burden of proving
> [the delivery] by means of wholly circumstantial evidence.

Trial Ct. Op. at 6.

Appellant's first two arguments, which focus on the inconsistencies between Detective Licata's and Corporal Cornick's testimony and the absence of direct evidence that Appellant delivered heroin to the CI, do not establish an abuse of discretion in the trial court's rejection of his motion for a new trial. Corporal Cornick did not have a direct view of the transaction, but Detective Licata did. Thus, the trial court, as finder of fact, was well within its authority to credit Detective Licata's testimony that the exchange occurred in Appellant's vehicle. Moreover, the trial court correctly observed that Appellant's convictions could be sustained by circumstantial evidence. *Cf. Storey*, 167 A.3d at 757. Therefore, Appellant's first and second weight of the evidence arguments fail.

As to Appellant's third argument, which challenges the quality of the circumstantial evidence, the perceived inadequacy of the search of the CI and the CI's vehicle for contraband before the alleged exchange does not warrant relief. Instantly, Corporal Cornick testified that he followed protocols when searching the CI, possibly having the CI shake out their undergarments, and examining the interior of the CI's car. Although the Corporal did not conduct a cavity search or exhaust all possible hiding spots in the CI's vehicle, Appellant's arguments rests on speculation that the CI secreted the heroin before the sale or the recorded buy money after the sale. However, any doubt

as to Appellant's conviction must be reasonable, and reasonable doubt does not require the Commonwealth to prove Appellant's guilt to a mathematical certainty. *Cf. Storey*, 167 A.3d at 757. Thus, we discern no basis to disturb the trial court's conclusion that there was ample evidence that the CI obtained the subject heroin during the meeting inside Appellant's car, and its finding in this regard did not shock one's sense of justice. *See Clay*, 64 A.3d 1049, 1054-55.

As noted earlier, however, the record does not support the court's suggestion that Appellant was observed getting into the backseat of his vehicle with the CI. *See supra*, note 3. Rather, the delivery that occurred inside Appellant's vehicle took place between the CI and either Appellant, who was in the front passenger seat at the time of the alleged transaction, or the driver of the vehicle. *See* N.T., 1/12/16, at 37. Nevertheless, the absence of evidence regarding which party delivered the heroin to the CI does not warrant relief.

The term "'[d]eliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780-102(b). This Court has noted that an actual delivery "means '[t]o convey or remove from one . . . person to another; pass or hand over from one to another.'" *Commonwealth v. Murphy*, 795 A.2d 1025, 1030 (Pa. Super. 2002). A "constructive transfer"

- 13 -

> requires that a person making a constructive transfer of a controlled substance, the transferor, must have ownership of the controlled substance; *i.e.*, the controlled substance must belong to the person, or the person must have dominion and control over it. The constructive transfer of the controlled substance occurs, then, whenever it is given to another by a third person who is acting at the transferor's direction or command.

*Id.* at 1031-32.

Instantly, as set forth above, there was ample evidence that the CI contacted "Mac" to purchase heroin, and that Appellant appeared at the prearranged location in his own vehicle. Appellant, moreover, appeared to conduct "counter surveillance" before the meeting and had his driver take him around the block before engaging with the CI. Later, after the CI exited Appellant's vehicle, Appellant exited the car, rummaged in the area where the CI had been seated, returned to the front passenger seat, and left the scene. Under these circumstances, we find adequate support that Appellant either directly, or through a third person under his command, transferred the heroin to the CI. Therefore, no relief is due.

Fourth, although Appellant asserts that the text messages from the cellular phone recovered at time of his arrest were insufficiently authenticated, the record belies Appellant's argument. Rather, the record reveals that Appellant was known as "Mac" or "Omizz," that the outgoing messages used those nicknames, and that these messages also referred to purported transactions at the same location as Appellant's sale to the CI. *See In re F.P.*, 878 A.2d 91, 94 (Pa. Super. 2005) (circumstantial evidence which "will

support a finding that the writing is genuine will suffice to authenticate the writing" (citations omitted)). Therefore, we find no merit to Appellant's assertions that the messages were not entitled to any weight for the limited purposes of identifying him as the individual known as "Mac" called by the CI. Moreover, because none of Appellant's arguments in support of his weight of the evidence claim show reversible error, we affirm the trial court's denial of his motion for a new trial. *See Clay*, 64 A.3d 1049, 1054-55

Appellant, in his final claim, asserts that the trial court's sentence was manifestly excessive. Appellant acknowledges that he was sentenced in the standard range for each offense but argues that the application of the guidelines was clearly unreasonable in light of his history and background. Appellant's Brief at 19, 34 He further challenges the decision of the court to run the two sentences in this case consecutively and consecutive to his previously imposed sentence. *Id.* at 19, 33. We conclude Appellant has failed to raise a substantial question warranting review.

This Court has stated that the

> discretionary aspects of [an appellant's] sentence [ ] are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test.
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

- 15 -

substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015) (some citations omitted).

Appellant filed a post-sentence motion *nunc pro tunc* requesting that the sentences in this case run concurrently to each other and the previously imposed sentence, and that the sentence was too severe in light of his rehabilitative needs. Appellant perfected this appeal by filing an appeal *nunc pro tunc*, and he preserved his sentencing claim in his Rule 1925(b) statement. Appellant has included in his brief a Rule 2119(f) statement. Therefore, we proceed to consider whether Appellant raised a substantial question.

It is well settled that

[t]he determination of what constitutes a substantial question must be evaluated on a case-by-case basis. "A substantial question exi[s]ts only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." In fact, this Court has recognized "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the

> crimes and the length of imprisonment." That is "in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case."

***Commonwealth v. Austin***, 66 A.3d 798, 808-09 (Pa. Super. 2013) (citations omitted).

Appellant presents boilerplate assertions that the trial court failed to consider his rehabilitative needs and mitigating factors and focused solely on the gravity of the offense.[5] However, considering the nature of the crimes we do not find the individual sentences or the aggregate sentence of thirty-nine to seventy-eight months' imprisonment to be so severe a punishment constituting an extreme circumstance under which the aggregate sentence is unduly harsh. Similarly, Appellant presents no further facts to conclude that the decision to run the sentences in this case consecutive to the sentence of sixteen to thirty-six months' imprisonment in his prior case was excessive in light of the criminal conduct at issue. ***See Commonwealth v. Hoag***, 665 A.2d 1212, 1214 (Pa. Super. 1995) (reiterating principle that defendants are not entitled to "volume discounts" for multiple criminal acts). Therefore, we find no substantial question and decline to proceed to review of Appellant's sentencing claim.

---

[5] We note that Appellant does not specify any mitigating circumstances. We further note that during allocution, Appellant merely invoked his constitutional rights to confront and cross-examine his accusers. N.T. at 57.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2017