J-A08016-17

2017 PA Super 237

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ZEPHANIAH STOREY | |
| Appellant | No. 1194 EDA 2016 |

Appeal from the Judgment of Sentence December 2, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000342-2014

BEFORE:  PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, J.:                              **FILED JULY 20, 2017**

Zephaniah Storey appeals from his judgment of sentence, entered in the Court of Common Pleas of Monroe County, following his conviction for one count of drug delivery resulting in death,[1] two counts of possession with the intent to deliver,[2] two counts of possession of drug paraphernalia,[3] and two counts of possession of a controlled substance.[4]  Upon review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2506(a).

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(32).

[4] 35 P.S. § 780-113(a)(16).

Nicholas Possinger testified that Donald J. O'Reilly, a recovering heroin addict, called him asking Possinger to obtain heroin for him. Possinger testified that he then telephoned Storey, his usual dealer, to secure the heroin. Possinger and Storey made arrangements to meet at the Mount Airy Casino parking lot on February 10, 2013, for the exchange. Possinger took O'Reilly's money and approached Storey's vehicle to purchase the heroin. Possinger was the only one who met with or saw Storey during the drug deal. Possinger bought ten bags of heroin, which he gave to O'Reilly. O'Reilly gave Possinger two bags as compensation for setting up the drug deal. O'Reilly contacted Possinger again on February 13, 2013, to have him set up another drug deal, again offering him two bags of heroin as compensation. This deal occurred at the intersection of Abeel Road and Fish Hill Road. As in the previous deal, Possinger was the only person who saw or dealt with Storey. This time, Possinger purchased six bags of heroin, which were stamped with the initials A.O.N. Possinger testified that he recognized this stamp from heroin he had used in the past, and warned O'Reilly to be careful when taking his four bags, as this heroin was stronger than that purchased on February 10, 2013, and O'Reilly was just starting to use heroin again.

On February 14, 2013, at approximately 1:45 a.m., Officer Christopher Staples of the Pocono Township Police Department responded to a call regarding an unresponsive male with a possible drug overdose. Officer Staples testified that he found O'Reilly in his bedroom in the early stages of

rigor mortis. Officer Staples observed drug paraphernalia around O'Reilly's room, including a lighter, a spoon, hypodermic needles, a measuring cup, and a belt. Deputy Coroner Teri Rovito subsequently pronounced O'Reilly dead. In O'Reilly's pockets, she discovered four empty wax paper bags stamped with the letters A.O.N. The toxicology report indicated that there were fatal levels of morphine in O'Reilly's blood.

Police obtained a search warrant for the cell phone records of Storey, Possinger, and O'Reilly in an attempt to determine their general location during the two drug transactions. The records indicated that Possinger's cell phone was utilizing towers in the general vicinity of the Mount Airy Casino on February 10, 2013, and that Storey was within the vicinity of the second transaction on February 13, 2013.

A jury convicted Storey of the aforementioned charges on September 10, 2015, and on December 2, 2015, he was sentenced to an aggregate term of not less than 108 months nor more than 276 months' imprisonment. Storey filed post-sentence motions on December 14, 2015, in which he requested reconsideration of sentence, arrest of judgment and a new trial. Post-sentence motions were denied on April 11, 2016. Storey filed a notice of appeal on April 18, 2016, followed by a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on June 7, 2016. The trial court filed its Rule 1925(a) opinion on June 16, 2016.

Storey raises the following issues for our appeal, *verbatim*:

1.  Whether the trial court erred in denying both pre- and post-trial motions arguing the drug delivery resulting in death statute, 18 Pa.C.S.A. §2506, as applied, is unconstitutionally vague?

2.  Whether the trial court erred in denying both pre- and post-trial motions arguing the drug delivery resulting in death statute, 18 Pa.C.S.A. § 2506, as applied, unconstitutionally rendered [Storey] strictly liable for the death of the decedent?

3. Whether the conviction for the drug delivery charge was insufficient as a matter of law?

4.  Whether the trial court erred in allowing the highly prejudicial bad acts testimony by Nicholas Possinger without giving any cautionary instruction that [Storey] had a lot of customers?

5.  Whether the trial court erred in allowing Officer Christopher Staples to respond to the Commonwealth's questions about whether he know [Storey's] phone number by stating "every day you respond to a call, it goes into the database," a statement which placed [Storey's] prior interaction with law enforcement before the jury?

6.  Whether the Commonwealth committed prosecutorial misconduct by bolstering its case before the jury within the jury?

7.  Whether the trial court erred in giving an accomplice liability charge to the jury that they could not understand, as clearly acknowledge by the attorneys and the trial judge on the record? This ambiguity was never cleared up with the trial judge even after the jury asked for clarification on the elements of the drug resulting in death charge and the confusing charge was left with them to decide whether [Storey] was guilty if either of the two drug delivery resulting in death charges in the alternative – either as a principal or as an accomplice.

8.  Whether the conviction for the drug delivery resulting in death was against the greater weight of the evidence?

Brief of Appellant, at 5-6.

Storey's first and second claims are that section 2506 is unconstitutionally void for vagueness as applied to Storey, because the vague language of the statute made it impossible for him to know what

conduct was illegal. To withstand constitutional scrutiny based on a challenge of vagueness, a criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). In addition, "vagueness challenges which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Commonwelath v. Heindbaugh*, 354 A.2d 244, 245 (Pa. 1976) (quotation omitted).

Section 2506 provides, in relevant part:

> (a) Offense defined. — A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. §2506(a). "When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(c).

This Court has previously rejected a challenge to the constitutionality of section 2506 in *Commonwealth v. Kakhankham*, 132 A.3d 986 (Pa Super. 2015). In *Kakhankham*, we examined the statute in the context of a drug dealer who sold heroin directly to the user, who subsequently died as a result of an overdose. In that case,

we noted that section 2506 consists of two principal elements: (i) intentionally administering, delivering, giving, prescribing, selling, or distributing any controlled substance or counterfeit controlled substance, and (ii) death caused by the use of that drug. *Id.* at 991-92. We also found the level of causation necessary for guilt to be a "but-for" test. *Id.* at 993. Finally, we held that the *mens rea* for the first element of section 2506 requires "intentional" action, while the second element requires that death must be the result of at least "reckless" action. *Id.* at 992, 95. Since the dangers of heroin are so great and well-known, we concluded that the sale of heroin, itself, is sufficient to satisfy the recklessness requirement when a death occurs as a result of the sale. *Id.* at 995-96.

Storey attempts to distinguish his case from ***Kakhankham*** by referring to the fact that he was unaware of O'Reilly's existence and did not intend to sell drugs specifically to him. Because Storey was unaware that O'Reilly would ultimately consume the drugs he sold, he could not have known that his conduct could result in liability under the statute if his sale of drugs resulted in O'Reilly's death. Additionally, since he was not aware of O'Reilly's existence, he could not have had the reckless state of mind that O'Reilly might die as a result of Storey's drug sales. Under the holding of ***Kakhankham*** and the statute's own words, this difference is immaterial. The statute requires that "*another person* dies as a result of using the substance [sold]." 18 Pa.C.S.A. §2506(a) (emphasis added). It does not require

the death of the person to whom the defendant originally sold the illegal substance. **See Orlosky v. Haskell,** 155 A. 112 (Pa. 1931) (holding that legislature must be intended to mean what it plainly expresses.) Therefore, section 2506 clearly applies to Storey's conduct; but for Storey's illegal sale of drugs, O'Reilly would not have died. **Kakhankham**, 132 A.3d, at 993. Additionally, **Kakhankham** held that section 2506 does not impose strict liability, so Storey's second claim must fail. **Id.** at 995. For the foregoing reasons, section 2506 is not unconstitutionally vague as applied to Storey.

Storey next claims that the there was insufficient evidence to support his section 2506 conviction. Our standard of review upon a challenge to the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001), quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super 2000) (citations and quotation marks omitted).

Storey again claims that, because he was unaware of O'Reilly's existence, he could not have been found to have intentionally sold heroin to him. As we have noted above, this is not what the jury had to find in order to find him guilty of the section 2506 charge. Instead, the jury must have found beyond a reasonable doubt that Storey: (i) intentionally sold a controlled substance, and (ii) the death of another person resulted from this sale. 18 Pa.C.S. § 2506(a).

Upon review of the record and viewing all evidence in a light most favorable to the Commonwealth, *DiStefano, supra*, we find that there was sufficient evidence to support a finding beyond a reasonable doubt that Storey intentionally sold heroin to Possinger, and that the heroin Storey sold to Possinger caused the death of O'Reilly. Possinger's testimony identified Storey as the dealer from whom he had purchased the drugs. The cell phone data corroborated Possinger's testimony. Officer Staples observed drug paraphilia around O'Reilly's room, and the coroner discovered four empty wax pages stamped with the same initials as the drugs Possinger had purchased earlier in O'Reilly's pockets. Finally, the toxicology report concluded that O'Reilly died from a heroin overdose.

Storey is correct in noting that no "recklessness" instructions were given to the jury as to the second element of the charge. However since we

have previously held that the sale of heroin satisfies the reckless element as to the possibility of death by the buyer, this argument garners Storey no relief. *Kakhankham*, 132 A.3d at 995-96. Therefore, we find there was sufficient evidence to allow a jury to conclude beyond a reasonable doubt that Storey intentionally sold heroin to Possinger, and this sale was responsible for O'Reilly's death.

Storey next claims that the trial court erred in allowing bad acts testimony by Nicholas Possinger without giving a cautionary instruction. Specifically, Possinger testified that Storey had "a lot of customers." N.T. Trial, 9/9/15, at 15. While Storey objected to this at trial, he did not request a cautionary instruction after the judge sustained the objection. "Failure to request a cautionary instruction upon the introduction of evidence constitutes a waiver of a claim of trial court error in failing to issue a cautionary instruction." *Commonwealth v. Bryant*, 855 A.2d 739 (Pa. 2004). Therefore, we find this claim waived.

Storey next claims that the trial court erred in allowing certain testimony of Officer Staples, and that the cautionary instruction regarding his testimony was insufficient. Our standard for examining if evidence was properly admitted is whether the trial court abused its discretion:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is

relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002) (citations omitted). If the trial judge gives curative instructions, it is "presume[d] that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001).

At trial, Officer Staples testified that Possinger's phone called a certain number multiple times on the days when the drug deals occurred. The Commonwealth attempted to prove that the number Possinger called was Storey's by showing that the number Possinger called also had frequent outgoing and incoming calls with the number assigned to Storey's parents' residence. Storey asserts that this testimony could have led the jury to infer that the police were aware of Storey's parents' number because of previous bad acts Storey may have committed when he resided with his parents. This claim is without merit.

We begin by noting that the information Storey now deems objectionable was originally elicited as the result of an objection interposed by the defense regarding the foundational basis for Officer Staples' knowledge of Staples' parents' phone number. Thus, it was the defense that "opened the door" to Officer Staples' testimony. Notwithstanding that fact, at the request of defense counsel, the court issued the following cautionary instruction to the jury:

> THE COURT: So members of the jury, there was just testimony of this witness that he knows Mr. and Mrs. Storey, the defendant's parents' phone number or contact information, all right. That's the evidence in this case. You're not to speculate, in any manner whatsoever, as to how or why that information is available to this particular witness.

N.T. Trial, 9/9/15, at 133.

In sum, because the evidence was relevant to prove that Storey was the dealer Possinger met with on February 10 and 13, 2013, and because the trial court provided a sufficient limiting instruction, we can discern no abuse of discretion by the trial court in allowing the testimony.

Storey next claims that the Commonwealth committed prosecutorial misconduct when it bolstered Possinger's credibility by stating in its closing arguments that "I wouldn't have called him if I didn't believe him." N.T. Trial, 9/10/15, at 137. This claim is meritless.

Generally, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Hawkins*, 701 A.2d 492, 503 (Pa. 1997). When reviewing allegedly improper comments, we must do so within the context of defense counsel's conduct. *Id.*

Here, the defense, in its closing arguments, asserted that the Commonwealth did not trust Possinger. N.T. Trial, 9/10/15, at 117 ("But why did the Commonwealth go to that length? It's because they don't trust Mr. Possinger either. They need something else. They don't trust Mr.

- 11 -

Possinger, they don't believe him either."). Having "opened the door" to this subject, Storey cannot now complain because the Commonwealth chose to further comment on what was behind that door. **Hawkins**, 701 A.2d at 503. Accordingly, Storey is entitled to no relief.

Next, Storey claims that the trial court erred in its instructions as to accomplice liability. Our standard of review for evaluating jury instructions is as follows:

> When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

**Commonwealth v. Prosdocimo**, 578 A.2d 1273, 1274 (Pa. 1990).

Storey points to one line of the accomplice liability instruction that he believes polluted the verdict because the jurors were confused due to seemingly contradictory statements contained within. Specifically, Storey cites the following passage: "In reviewing the evidence and testimony of Nick Possinger's criminal involvement, you must regard him as an accomplice in the crime charged and apply the special rules to his testimony. You must decide whether Nick Possinger was an accomplice in the crimes charged." N.T. Trial, 9/10/15, at 174-75. We agree that, taken out of context, these two sentences may seem to contradict each other. However, taken as a whole, the trial court's instruction makes it clear to the jury that it was tasked with deciding if Possinger was, indeed, an accomplice, and

- 12 -

instructed the jury on the elements necessary to find that Storey was an accomplice.  The relevant portion of the instruction reads in full as follows:

> Now I'm going to talk a little bit about the testimony in this case of the alleged accomplice which was Nick Possinger.  Before I begin these instructions, let me define to you the term "accomplice."
>
> A person is an accomplice of another person in the commission of a crime if he or she has the intent of promoting or facilitating the commission of that crime and solicits the other person to commit it or aids or agrees or attempts to aid such other person in planning or committing a crime.  Put simply, an accomplice is a person who knowingly and voluntarily cooperates with or aids another person is committing an offense.
>
> When a Commonwealth witness is an accomplice, his or her testimony must be judged by special precautionary rules.  Experience shows that an accomplice, when caught, may often try to place the blame falsely on someone else.  He or she may testify falsely in the hope of obtaining favorable treatment or for some corrupt or wicked motive.  On the other hand, an accomplice may be a perfectly truthful witness.  The special rules that I give you are meant to help you distinguish between truthful and false accomplice testimony.
>
> *In reviewing the evidence and the testimony of Nick Possinger's criminal involvement, you must regard him as an accomplice in the crime charged and apply the special rules to his testimony. You must decide whether Nick Possinger was an accomplice in the crime charged.  If after considering all the evidence you find that he was an accomplice, then you must apply the special rules to his testimony, otherwise ignore those rules.  Use this test to determine whether Nick Possinger was an accomplice*.  Again, an accomplice is a person who knowingly and voluntarily cooperates with or aids another person in the commission of a crime.

**See id.** at 173-75 (emphasis added).  Because the instruction governing the jury's determination of Possinger's accomplice liability, taken as a whole,

- 13 -

clearly, adequately, and accurately states the law, Storey's claim is without merit.[5]

Storey last claims that the verdict was against the weight of the evidence.

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Stokes,* 78 A.3d 644, 650 (Pa. 2013), quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations, quotation marks, and footnote omitted). In other words, a court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence as to shock one's sense of justice. *Id.* at 651. The determination of whether to grant a new

---

[5] Storey also argues that the jury's request for clarification on the drug delivery charge indicated that the jury was confused about the accomplice liability charge. However, since the jury never requested clarification on accomplice liability charge, this claim is nothing more than speculative and, as such, is without merit.

trial rests within the discretion of the trial court, and we will not disturb this determination absent an abuse of discretion. *Id.*

Here, Storey again relies upon the fact that he had no connection to O'Reilly and neither intended to nor actually did distribute anything to O'Reilly. However, as we have noted in our earlier discussion, Storey's knowledge of the end-user – O'Reilly – is irrelevant to his guilt under section 2506. Upon review of the record as a whole, the jury's verdict is not so against the weight of the evidence as to shock one's sense of justice. *See id.* As such, the trial court did not abuse its discretion in denying Storey's motion for a new trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2017