J-A05026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                           :           PENNSYLVANIA
                                           :

                      v.                      :

                                         :

THOMAS EUGENE BEEBE, II         :
                                         :

             Appellant          :     No. 247 WDA 2018

Appeal from the Judgment of Sentence January 31, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000880-2017


BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:               **FILED MAY 14, 2019**

Appellant, Thomas Eugene Beebe, II, appeals *pro se* from the judgment

of sentence entered on January 31, 2018, in the Erie County Court of Common

Pleas.  We affirm.

The relevant facts in this matter were set forth by the trial court as

follows:

> On December 3rd, 2016, Kristen Ross and Amanda
> Hutchings were at the Tamarack bar in Corry, Pennsylvania. (*See*
> Notes of Testimony, Jury Trial, Day 2, Dec. 19, 2017, pg. 64:16-
> 23). Sometime during the evening, Appellant, who had an "on and
> off" romantic relationship with Ms. Ross, entered the bar, spoke
> with Ms. Ross, and Appellant and Ms. Ross exited the bar. (*Id*. at
> 65:14-19; 66:7-9; 89:8-13). Appellant and Ms. Ross talked for "a
> while" outside "down a little ways up the road." (*Id*. at 66:14-21;
> 70:24-71:1). Ms. Hutchings left the bar to check on Ms. Ross and
> Appellant, who were standing three to four feet apart from each
> other, and [Ms. Hutchings] observed Appellant remove a firearm
> from inside his coat and discharge[] a single round away from the
> bar. (*Id*. at 66:10-16; 71:4-72:4; 72:13-25). Ms. Hutchings then
> entered the bar and notified the bartender, Sandra Vantassel, who

locked down the bar for the safety of the patrons and called the police (*Id*. at 72:16-17; 73:9-14; 73:24-74:1; 89:10-23; 90:17-91:-6). Ms. Vantassel stated she heard a "pop" before Ms. Hutchings reentered the bar. (*Id*. at 89:20-23; 90:12-16).

After Ms. Vantassel called the police, Officer Richard Bayhurst of the Corry City Police Department arrived at the bar in response to information regarding "shots fired outside the location of the Tamarack Bar." (*Id*. at 115:16-19). Officer Bayhurst arrived at the bar and made contact with Ms. Ross and obtained a statement from Ms. Ross, which was recorded with Officer Bayhurst's body camera. (*Id*. at 116:7-16). Officer Bayhurst attempted to locate Appellant, but when unable to do so, he began searching the area for evidence and recovered pieces of a magazine for a Smith and Wesson [firearm] as well as a .380 caliber shell casing. (*Id*. at 117:5-18; 121:8-14; 125:4-9; 125:20-22). Officer Bayhurst later made contact with Steve Holton, the owner of the Smith and Wesson, who reported the same Smith and Wesson missing on November 8th, 2016. (*Id*. at 127:8-20; 132:8-12; 133:9-18). Ultimately, [on December 5th, 2016,] Deputy U.S. Marshall Brent Novak apprehended Appellant in [Buffalo, New York. When the Marshall apprehended Appellant, Appellant had the Smith and Wesson firearm and the firearm's magazine concealed on his person]. (*Id*. at 109:3-111:4; 132:18-133:8).

On April 19th, 2017, the District Attorney's Office filed a Criminal Information, charging Appellant with: (1) Terroristic Threats Causing Serious Public Inconvenience, in violation of 18 Pa.C.S. § 2706([a])(3); (2) Terroristic Threats With Intent to Terrorize Another in violation of 18 Pa.C.S. § 2706([a])(1); (3) Recklessly Endangering Another Person in violation of 18 Pa.C.S. § 2705; (4) Harassment in violation of 18 Pa.C.S. § 2709([a])(2); (5) Discharging of a Firearm Inside City Limits in violation of [Local Ordinance] 750(1); (6) Receiving Stolen Property in violation of 18 Pa.C.S. § 3925([a]); and (7) Firearms Not to Be Carried Without a License in violation of 18 Pa.C.S. § 6106([a])(1).

On December 18th, 2017, a jury trial was held; however, this [t]rial [c]ourt declared a mistrial shortly after the trial began. Specifically, the Commonwealth called [Ms.] Ross as a witness to testify, but the Commonwealth's direct examination of Ms. Ross prompted Appellant's counsel to object and move for a mistrial [because Ms. Ross stated that, at the time of the incident,

Appellant was on probation and not permitted to be at the bar.] … [The trial court granted Appellant's motion for a] mistrial and a new jury trial was rescheduled for the next day on December 19, 2017.

On December 19th, 2017, a new jury was selected and a second jury trial [began]. During the Commonwealth's case-in-chief, Assistant District Attorney Grant T. Miller called Ms. Ross, who testified that when she provided a statement to Officer Bayhurst on December 3rd, 2016, she "did not tell the police the truth" and specifically testified that she "told the police that [Appellant] had a gun, but [she] . . . did not see a gun." (*See* Notes of Testimony, Jury Trial, Day 2, Dec. 19, 2017, pg. 32:4-11). In order to impeach Ms. Ross' testimony, ADA Miller played to the jury the body camera video footage capturing Ms. Ross' statements to Officer Bayhurst recorded on December 3rd, 2016. After a portion of the body camera footage was played to the jury, this [t]rial [c]ourt excused the jury. [Appellant's trial counsel,] Attorney [John M.] Bonanti then objected to the display of the body camera footage and orally moved for a mistrial. (*Id*. at 33:8-22). In essence, Attorney Bonanti articulated his objection as follows:

> Officer Bayhurst was trying to figure out where Appellant lived and Officer Bayhurst is talking about other drug criminals in Corry and Officer Bayhurst said Appellant lives in an area where there's a trade—drug trade, and Appellant is making lots of money off the trade. And there's no relevance and it's certainly not unforeseeable that the jury takes that and makes an inference—a nasty inference from it.

(*Id*. at 38:22-39:4). After a lengthy discussion outside the presence of the jury on the record among Attorney Bonanti, ADA Miller, and the undersigned judge, and after this [t]rial [c]ourt reviewed the remainder of the video outside of the presence of the jury, this [t]rial [c]ourt permitted ADA Miller to display the remainder of the video footage to the jury for the limited purpose of impeaching Ms. Ross with the aid of a carefully worded and helpful curative instruction. (*Id*. at 47:14; 33:8-55:19; 58:11-13). Specifically, this [t]rial [c]ourt issued the following curative instruction to the jury before the remainder of the footage was displayed:

> Hello, again, jurors. I have to give you a very important cautionary instruction. And I'm going to direct you to disregard anything on the tape said by Patrol Officer Bayhurst. You are to totally disregard anything Officer Bayhurst said on the tape. Officer Bayhurst tried to infer things that are definitely untrue and prejudicial and not relevant to this case. His statements are not evidence of anything. You may proceed.

(*Id*. at 55:22-56:5).[1] Again, Attorney Bonanti objected to the curative instruction arguing the evidence was irrelevant and "caused an improper taint or prejudice" despite this [t]rial [c]ourt issuing a[] proper curative instruction. (*Id*. at 56:10-18). Appellant was ultimately convicted of all criminal charges and on January 31st, 2018, this [t]rial [c]ourt entered the following Sentencing Order:

- Count 1 - Terroristic Threats Cause Serious Public Inconvenience - To be confined for a minimum period of 2 Year(s) and a maximum period of 5 Year(s) at PA Dept. of Corrections in the standard range.

- Count 2 - Terroristic Threats With Intent To Terrorize Another - To be confined for a minimum period of 1 Year(s) and a maximum period of 2 Year(s) at PA Dept. of Corrections in the standard range and consecutive to Count 1.

- Count 3 - Recklessly Endangering Another Person - To be confined for a minimum period of 6 Month(s) and a maximum period of 2 Year(s) at PA Dept. of Corrections in the standard range and consecutive to Count 2.

- Count 4 - Harassment - Follow In Public Place -A determination of guilty without further penalty.

- Count 5 - Discharge Any Firearm Within The City Limits - A determination of guilty without further penalty.

---

[1] Errant left-margin indentation omitted.

- Count 6 - Receiving Stolen Property - To be confined for a minimum period of 18 Month(s) and a maximum period of 4 Year(s) at PA Dept. of Corrections in the standard range and consecutive to Count 3.

- Count 7 - Firearms Not To Be Carried Without a License - To be confined for a minimum period of 3 Year(s) and a maximum period of 6 Year(s) at PA Dept. of Corrections in the standard range and consecutive to Count 6.

Trial Court Opinion, 4/17/18, at 2-5 (emphasis omitted).

Appellant filed a timely notice of appeal on February 16, 2018. On February 20, 2018, the trial court ordered Appellant to comply with Pa.R.A.P. 1925(b) and file a concise statement of errors complained of on appeal. Appellant filed a counseled Rule 1925(b) statement on March 2, 2018.

On March 5, 2018, Appellant filed a *pro se* petition to waive his right to counsel. On March 21, 2018, Appellant's counsel filed a motion to withdraw from representing Appellant and requested a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). On April 4, 2018, the trial court held a ***Grazier*** hearing, concluded that Appellant knowingly, intelligently, and voluntarily waived his right to counsel, and permitted Appellant to proceed on appeal *pro se*. Order, 4/4/18. The trial court also granted counsel's motion to withdraw. ***Id.*** On April 17, 2018, the trial court filed its Rule 1925(a) opinion.

At the outset, we are constrained to point out the myriad deficiencies in Appellant's *pro se* brief. Appellant's brief is merely an eight-page argument

in narrative form with the trial court's opinion appended. Appellant has violated nearly every briefing requirement set forth in our Rules of Appellate Procedure as he failed to include in his brief: a statement of jurisdiction pursuant to Pa.R.A.P. 2114; the order in question pursuant to Pa.R.A.P. 2115; a statement of the scope and standard of review pursuant to Pa.R.A.P. 2111(a); a statement of the questions involved pursuant to Pa.R.A.P. 2116; a statement of the case pursuant to Pa.R.A.P. 2117; a summary of the argument pursuant to Pa.R.A.P. 2118; and a copy of his Pa.R.A.P. 1925(b) statement pursuant to Pa.R.A.P. 2111(d). We note that it is within our discretion to quash this appeal due to these violations. ***See Commonwealth v. Adams***, 882 A.2d 496, 497 (Pa. Super. 2005) ("This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure."). However, our further review reveals an additional error that precludes appellate review.

As noted above, Appellant filed a counseled Rule 1925(b) statement of errors complained of on appeal on March 2, 2018. In that statement, Appellant's counsel raised the following issue: "The lower court erred in admitting testimony by [Ms. Ross] indicating that [the] responding Police Officer was in the area because he was looking for [Appellant] who was maybe on probation and not allowed to be at the bar (scene of the offense)." Pa.R.A.P. 1925(b) Statement, 3/2/18. However, in his *pro se* brief on appeal, Appellant presents and argues a markedly different issue; he asserts the trial

court erred in allowing into evidence the video and audio recording from the arresting officer's body camera. Appellant's Brief at unnumbered 4-6.[2]

By failing to raise this issue in his Rule 1925(b) statement, Appellant deprived the trial court of the opportunity to address Appellant's claim of error; it is well settled that issues not presented in a court-ordered Rule 1925(b) statement are waived on appeal. *See Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (citing *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived."). Because Appellant failed to preserve any issue for appellate review, we affirm Appellant's judgment of sentence.[3]

_____

[2] "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1037 (Pa. Super. 2018) (citation omitted). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Id.*

[3] Were we to reach this issue, we would conclude that Appellant is entitled to no relief. As noted by the trial court in its opinion, following the introduction of the audio and video from Officer Bayhurst's body camera, Appellant's counsel objected, and the trial court allowed the evidence only insofar as it impeached Ms. Ross's statement that she did not see a gun. Trial Court Opinion, 4/17/18, at 4-5 (citing N.T. 12/19/17, at 38). The trial court then gave a curative instruction and told the jury it was to disregard any statements made by Officer Bayhurst on the body camera recording that was made during his interaction with Ms. Ross. *Id.* at 5 (citing N.T. 12/19/17, at 55-56). The admission of evidence is left to the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. *Commonwealth v. Storey*, 167 A.3d 750, 758 (Pa. Super. 2017) (citation omitted). In determining what evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/14/2019

---

against any prejudicial impact.  ***Id.***  Where the trial judge gives a curative instruction, it is presumed that the jury will follow the instructions of the court. ***Id.***  Because the audio and video from the body camera was used solely for impeachment purposes, and because the trial court gave a curative instruction as to how this evidence was to be considered, if we were to reach this issue, we would discern no abuse of discretion in the trial court's evidentiary ruling.