J-A18033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                   :               PENNSYLVANIA
                                                 :
                  v.                             :
                                                   :
NICOLETTA MICHELLE ROBINSON      :
                                                     :
                Appellant               :       No. 1177 WDA 2021

Appeal from the Judgment of Sentence Entered May 7, 2021
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):
CP-43-CR-0001795-2019

BEFORE: STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: December 2, 2022**

Nicoletta Michelle Robinson appeals the judgment of sentence entered after a jury found her guilty of drug delivery resulting in death ("DDRD"), aggravated assault, criminal use of communication facility, simple assault, recklessly endangering another person ("REAP"), and possession with intent to deliver a controlled substance ("PWID").[1] We vacate the conviction for aggravated assault and affirm the judgment of sentence in all other respects.

On June 16, 2019, the victim searched the internet for a taxi service, found Robinson's service, and contacted her. That day and the following day,

---

[1] 18 Pa.C.S.A. §§ 2506(a), 2702(a)(1), 7512(a), 2701(a)(1), 2705, and 35 P.S. § 780-113(a)(30), respectively.

June 17, 2019, Robinson drove the victim, who had Crohn's disease, to various locations, including to hospitals in both Pennsylvania and Ohio. The two women were in communication via text message during those two days. The victim lived with her father in Mercer County, Pennsylvania, while Robinson was based in Youngstown, Ohio.

On June 16, the victim and Robinson exchanged the following texts:[2]

Victim: thank you so much for everything. I appreciate you more than you know

Robinson: No problem, hun. Trust me, the money helped me, too. It's been rough with school. Hopefully you'll feel better soon.

Victim: Hoping

Victim: Really, really hoping.

Robinson: FYI my house is only 34 minutes.

Robinson: There's no way nor.

Robinson: Not

Victim: Should I wait to take the other? Only think I'm scared of is I actually have a blockage.

Robinson: It should still help, though. If it's not you might have blockage [because] you should vm [sic] feel better.

Victim: Maybe I should have went in ugh this pain is agony.

Victim: It's like a stabbing pain that just won't go away.

Robinson: Did it ease up at all?

---

[2] The Commonwealth presented the text messages as exhibits. Those exhibits are not part of the record. However, portions of the text messages were put into the record through the testimony of Trooper Joseph Morris.

Victim: I couldn't ask you to come back. I have no cash lol.
I have money in the bank but couldn't get it till tomorrow.
I left my debit card in Cleveland.

*See* N.T., 3/10/21 (Morning Session), at 40-43.

That same day, June 16, the victim searched the internet for "side effects and long-term effects of methadone," "is methadone an opiate," "how much methadone is too much," and "does methadone make you high." *Id.* at 57-58.

The next day, June 17, the victim texted Robinson, "Do you have 250 ml of that stuff I can buy?" *Id.* at 67. Robinson texted back, "yeah." *Id.* According to cell phone records and medical records, the victim was in Sharon Regional Medical Center in Mercer County, Pennsylvania, when she sent the message. *See id.* at 50 (victim sent text on June 17, 2019, at 7:37 p.m.); N.T., 3/10/21 (Afternoon Session), at 61 (victim was admitted to Sharon Regional Medical Center on June 17, 2019, at 11:43 a.m.); *id.* at 64 (victim left Sharon Regional Medical Center on June 17, 2019, at 8:43 p.m.).

Robinson and the victim then discussed payment and decided that the victim would pay Robinson $100 by check. N.T., 3/10/21 (Morning Session), at 67. Robinson picked the victim up from the hospital in Sharon and the two went to a gas station in Hermitage, Pennsylvania. *Id.* at 3-16. After they purchased some items, Robinson drove the victim home to her father's house in Mercer County, Pennsylvania. When they arrived, the victim paid Robinson. *Id.* at 71. Later that night, the victim texted Robinson not to cash the check and told her that she would pay her in cash the following day. *Id.*

At 72. During that night, the victim ingested the methadone and died. The victim's father, who had been on vacation at the time of her death, discovered her body in the home six days later. Trooper Joseph Morris recovered a vial with pink fluid from the home that the lab determined contained methadone, a Schedule II substance. *See* N.T., Trial, 3/9/21 (Afternoon Session), at 85, 114-15.

An expert in forensic pathology, Dr. Eric Vey, testified that the victim's cause of death was a lethal dose of methadone. N.T, Trial, 3/10/21 (Afternoon Session), at 80. He also testified that upon a review of her autopsy photographs, certain characteristics of her body were indicative of an overdose. *Id.* at 99. Dr. Vey also testified about the effect of postmortem redistribution on the level of methadone found in the decedent's blood, which he described as a phenomenon that occurs when time has elapsed between the time of death and when the blood of the decedent is tested. During this time, "the blood that got deposited into the central tissues and organs, the lungs and the liver and the heart, diffuses back out of the tissues and into the blood creating an elevated central blood level compared to peripheral blood level." *Id.* at 95. He said that postmortem redistribution had not affected the level of methadone they found.

The chief deputy coroner in Mercer County, Robert L. Snyder, testified that the victim had dried secretions in her nose consistent with a drug overdose. N.T., 3/9/21 (Afternoon Session), at 14. He testified that with an overdose, "the lungs become compromised, they fill with fluid, and then the

frothiness comes out of the nasal cavity." *Id.* at 15. He also testified that the dose of methadone in the victim's body was in the fatal range. *Id.* at 30. Dr. Snyder ruled that the manner of death was accidental, and the cause of death was "respiratory failure due to drug toxicity." *Id.* at 31. In layman's terms, he stated that it was a way of saying her cause of death was from a drug overdose or a combination of the drugs. *Id.*

The Commonwealth also presented portions of Robinson's interview with Trooper Morris, after the victim died.

> [Commonwealth]: Okay. Now, Ms. Robinson - - we also heard her say right about the 20-minute mark, and I might be misquoting here, but essentially, **so you are saying she overdosed and you think I gave it to her.** My question is up until that point had you ever said the word overdose to her?
>
> [Trooper Morris]: No.
>
> [Commonwealth]: Not in the lobby, not on the phone, not anywhere?
>
> [Trooper Morris]: No[.]
>
> [Commonwealth]: Up until that point had you ever told her how [the victim] died?
>
> [Trooper Morris]: No.

N.T., Trial, 3/10/21 (Afternoon Session), at 32-33 (emphasis added).

Following a four-day trial, the jury found Robinson guilty. The court sentenced Robinson for the DDRD and criminal use of a communication facility convictions to an aggregate term of nine years and three months to 27 years of imprisonment. The court determined that aggravated assault,

PWID, REAP, and simple assault merged for sentencing purposes. Robinson

filed a post-sentence motion which the trial court denied.[3] This timely appeal

followed.

Robinson raises the following issues:

I.  Was the evidence at trial insufficient to support Robinson's conviction for drug delivery resulting in death because:

a. It was insufficient to support a finding that the alleged drug delivery occurred within the Commonwealth of Pennsylvania; and/or

b. It was insufficient to support a finding that Robinson was reckless as to the allegedly delivered drug, methadone, causing the decedent's death; and/or

c. It was insufficient to supporting a finding that the allegedly delivered drug actually caused the decedent's death because the Commonwealth's expert testimony concluding as much was predicated on a basic statistical error ruling out an exculpatory phenomenon by resort to the average effect of that phenomenon rather than the range of effects of that phenomenon?

II. Was the evidence at trial insufficient to support Robinson's conviction for aggravated assault because:

a. It was insufficient to support a finding that Robinson was malicious as to the allegedly delivered drug, methadone, causing the decedent's death; and/or not true

_____

[3] The court sentenced Robinson on May 10, 2021. On May 17, the court granted Robinson's motion for an extension to file her post-sentence motion. Robinson filed her post-sentence motion on May 25, within the allotted time ordered by the court. Thus, this appeal is timely.

       b. It was insufficient to support a finding that she engaged in any assault?

    III.    Was the evidence at trial insufficient to support Robinson's conviction for simple assault because it was insufficient to support a finding that she engaged in any assault?

    IV.    Was the evidence at trial insufficient to support Robinson's conviction for recklessly endangering another person because it was insufficient to support a finding that she engaged in contact or created a risk of [contact] causing harm?

    V.    Was the evidence at trial insufficient to support Robinson's conviction for delivery of a controlled substance because it was insufficient to support a finding that she delivered a controlled substance within the Commonwealth of Pennsylvania?

    VI.    In light of the foregoing, was the evidence at trial insufficient to support Robinson's conviction for criminal use of a communication facility because it was qualitatively or quantitatively insufficient to support a finding that she used communications facility to commit the predicate violation of the Drug Act?

Robinson's Br. at 4-5 (suggested answers omitted).

Robinson challenges the sufficiency of the evidence for each of her convictions. When reviewing a challenge to the sufficiency of the evidence, we determine "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Storey*, 167 A.3d 750, 757 (Pa.Super. 2017) (citation omitted). We review the entire record and the evidence. *See id.* We do not "weigh the evidence and substitute our judgment for the fact-finder."

*Id.* (citation omitted). Furthermore, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.* (citation omitted).

*Drug Delivery Resulting in Death (DDRD)*

Robinson claims that the Commonwealth failed to present sufficient evidence for the crime of DDRD. She argues that it failed to show that the drug delivery occurred in Pennsylvania, that she was reckless in delivering methadone to the victim, and that the ingestion of methadone caused the victim's death. Robinson points to an alleged gap in the timeline and claims that the evidence suggested that she drove the victim through Ohio to return to the victim's house. She also maintains that the record does not support a finding that she delivered the methadone to the victim once they arrived at her home in Pennsylvania. According to Robinson, the evidence shows "that Robinson had been providing services and goods to [the victim] with promises of future payment, and that they had agreed to simply settle the proverbial tab at the trailer." Robinson's Br. at 21.

Robinson also challenges the *mens rea*. She argues that the evidence suggested that she was not reckless but rather "believed that providing methadone to [the victim would help her[.]]" *Id.* at 24. She also takes issue with the Commonwealth's evidence of causation because, in her view, Dr. Vey erred in his statistical calculation of postmortem redistribution.

DDRD occurs when someone dies as a result of using a controlled substance and the defendant intentionally administered, dispensed,

delivered, gave, prescribed, sold, or distributed it in violation of specified provisions of the Controlled Substance, Drug, Device and Cosmetic Drug Act ("Drug Act"). **See** 18 Pa.C.S.A. § 2506(a). Pursuant to the terms of the Drug Act, the delivery must have occurred "within the Commonwealth [of Pennsylvania]." 35 P.S. § 780-113(a).

Thus, to sustain its burden, the Commonwealth must prove that the delivery of the drug occurred in Pennsylvania and the use of that drug resulted in the death of another. **See** 18 Pa.C.S.A. § 2506(a); **Commonwealth v. Peck**, 242 A.3d 1274, 1285 (Pa. 2020) (vacating judgment of sentence for DDRD where drug delivery occurred in Maryland). As for *mens rea*, the Commonwealth must show that the defendant acted intentionally when delivering the drug and that the decedent's death was a result of the defendant's recklessness. **See Commonwealth v. Kakhankham**, 132 A.3d 986, 992, 995 (Pa.Super. 2015). The crime consists of "an intentional act in providing contraband, with a reckless disregard of death from the use of the contraband." **Commonwealth v. Carr**, 227 A.3d 11, 16-17 (Pa.Super. 2020).

Robinson's claims lack merit. The evidence was sufficient to prove circumstantially that the delivery occurred in Pennsylvania. Robinson and the victim discussed via text message the purchase of 250 ml of "stuff" while the victim was in the hospital in Sharon. Robinson then picked up the victim from the hospital, took her to the gas station in Hermitage, and ultimately to her home in Mercer County. The evidence of the trip between points in

Pennsylvania was sufficient to prove that the delivery occurred in Pennsylvania. Robinson points to an alleged gap in the timeline and local geography to argue that the gap is better explained by a route through Ohio, rather than only through Pennsylvania. We think the evidence was sufficient to raise the reasonable inference that they did not needlessly double-back into Ohio, particularly in the absence of any affirmative evidence that the trip crossed the border. The Commonwealth has to prove guilt beyond a reasonable doubt, not to a mathematical certainty or beyond all possibility of innocence.[4]

Robinson's claim that the Commonwealth failed to prove recklessness likewise fails. The Commonwealth presented evidence that Robinson sold the victim methadone. Methadone is an opioid "used to help dependent patients reduce their craving and symptoms of withdrawal." **See Int. of L.J.B.**, 199 A.3d 868, 871 n.3 (Pa. 2018). Robinson sold this opioid to the victim without any consideration of the effects that it would have on the victim, including whether she could possibly overdose. **See id.** at 870 n.2 (discussing opioid addiction crisis in the United States and noting "[r]ecent statistics place Pennsylvania among the states with the highest rates of drug overdose

---

[4] In her reply brief, Robinson includes Google maps to support her claim that she and the victim could have driven though Ohio. However, these maps were not presented to the jury, and the jury was not offered any evidence that would suggest Robinson and the victim left the state while traveling to the trailer.

deaths, with opioid-related overdose deaths occurring at a rate of 18.5 per 100,000 persons"). The Commonwealth also presented Robinson's interview with Trooper Morris where she stated, "So you're saying that she overdosed and you think I gave it to her." N.T., Trial, 3/10/21 (Afternoon Session), at 32. Robinson made this statement with no knowledge of the cause of the victim's death, thus exhibiting that she understood the risk of death from the ingestion of methadone. *See Commonwealth v. Burton*, 234 A.3d 824, 833 (Pa.Super. 2020) (stating the sale of fentanyl establishes the *mens rea* for recklessness for drug delivery resulting in death).

As to Robinson's claim regarding causation, we conclude the Commonwealth established causation. Robinson takes issue with Dr. Vey's statistical calculations of the postmortem redistribution. She faults him for basing his opinion on the average effect of postmortem redistribution, rather than on its average effect. This argument does not render the evidence insufficient. Her challenge goes to the weight and not the sufficiency of the evidence. *See Commonwealth v. Meals*, 912 A.2d 213, 223–24 (Pa. 2006).

*Aggravated Assault*

Robinson maintains that the evidence was insufficient to support the conviction of aggravated assault because the Commonwealth did not prove that Robinson "assaulted" the victim. She also maintains that the Commonwealth failed to show that she acted maliciously, arguing there was "no evidence that Robinson knew . . . that[] providing methadone to

McConnell was virtually certain to result in her death or serious bodily injury." Robinson's Br. at 33.

To prove aggravated assault, the Commonwealth was required to prove that Robinson attempted "to cause serious bodily injury to [the victim], or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1).[5] The required *mens rea* for aggravated assault is malice, which is defined as "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." ***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017) (citation omitted). The crime of aggravated assault requires a state of mind that is "equivalent to that which seeks to cause injury." ***Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995).

Here, the Commonwealth suggests that it established the *mens rea* by showing that Robinson "seized upon an opportunity to make money at the expense of a person in chronic pain and who was naïve as to the effects of methadone." Commonwealth's Br. at 30-31. It maintains that Robinson

---

[5] Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301 ("Serious bodily injury"). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." ***Id.*** ("Bodily injury").

"consciously disregarded an unjustifiable and extremely high risk her actions of selling a narcotics naïve victim methadone." *Id.* at 31. It also suggests that Robinson's malice may be inferred from her statement to police that she understood that they were suggesting that the victim overdosed and that she had given the victim methadone. It further points out that Robinson "not only negotiate[d] the sale of 250 ml of methadone to the victim, but actively encouraged the victim to consume the methadone over the victim's concerns," noting that Robinson encouraged the victim through text messages to take the methadone even though the victim was concerned about a blockage. *Id.* at 30. Similarly, the trial court suggests that Robinson "knowingly preyed upon a naïve and vulnerable victim" and because of this, the element of malice was satisfied. Opinion, 9/16/21, at 6.

The Commonwealth contends that this case is akin to **Commonwealth v. Busbey**, No. 186 MDA 2019, 2020 WL 865044 (Pa.Super. filed Feb. 21, 2020) (unpublished memorandum).[6] There, the victim, the defendant, and the defendant's boyfriend purchased heroin. The victim was "narcotics naïve," as he had not developed a tolerance to heroin. *Id.* at *1. The defendant injected the victim with heroin, while the defendant's boyfriend injected the defendant and himself. *Id.* The defendant watched as the victim started convulsing and his lips turned blue. To

---

[6] Non-precedential decisions are not binding, but may be cited as "persuasive" authority pursuant to Pa.R.A.P. 126(b)(2).

"distance herself from the whole issue" and not be involved, the defendant left the victim and went home, without calling 911. *Id.* The Commonwealth presented the testimony of three medical witnesses at trial, including an expert in forensic toxicology who testified, among other things, that the victim "had a long period of survival following the ingestion of the drug." *Id.* at * 2.

On appeal, this Court concluded the evidence was sufficient to prove malice. We pointed out that the defendant knew the victim was narcotic-naïve and the heroin was of good quality and that she watched the victim begin to exhibit signs of an overdose, as he began to convulse and his lips turned blue. *Id.* at *5. We pointed out that the defendant and her boyfriend discussed calling for medical assistance but did not, choosing instead to leave and sell or stash the remainder of the heroin. *Id.* We noted that the victim "suffered from a slow, hours-long overdose death that could have been halted if medical personnel had been called." *Id.* We concluded that the defendant's actions of injecting the victim with heroin, watching him overdose, and then leaving the victim to die, "showed the hardness of heart, and disregard of social duty characteristic of the mental state of malice." *Id.* We also concluded that providing the heroin to the victim and then not seeking medical care "created 'an unjustified and extremely high risk that [her] actions might cause death or serious bodily harm.'" *Id.* (quoting *Packer*, 168 A.3d at 168). We further noted that heroin "has a 'high potential for abuse'" and its dangers are "legendary and known on a

widespread basis[.]" *Id.* (quoting **Minn. Fire and Cas. Co. v. Greenfield**, 805 A.2d 622, 627 (Pa.Super. 2002)).

Here, we agree with Robinson that the Commonwealth failed to present sufficient evidence to prove malice. Unlike the defendant in **Busbey**, no evidence showed that Robinson knew that the victim had overdosed or that she failed to seek medical assistance while knowing the victim was in danger due to the drug. Even considering the victim's apparent naivety and the text messages that occurred on the day prior to her death, there is no evidence that at the time Robinson sold the methadone or at the time the victim ingested the methadone, Robison had a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty[.]" **Packer**, 168 A.3d at 168. Nor was there evidence that, like heroin, methadone's dangers are "legendary and known on a widespread basis." **Busbey**, 2020 WL 865044, at *5; **see Kakhankham**, 132 A.3d at 996 (discussing inherent dangerous nature of heroin and that the risk of death that comes with ingesting the drug is foreseeable). The Commonwealth failed to present evidence that Robinson sought to cause the victim's death or injury, or that she acted with an extreme difference to human life.

*Simple Assault*

Robinson maintains that there was no evidence that she "assaulted" the victim and therefore the Commonwealth failed to sustain its burden for

simple assault. Robinson argues that a physical, contact-based assault is required to satisfy the element of bodily injury.

The Commonwealth presents sufficient evidence for the charge of simple assault where it proves that the defendant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." ***Id.*** at § 2301 ("Bodily injury").

Here, the court rejected Robinson's claim that the Commonwealth was required to prove physical contact to prove an actual assault. The court held that because Robinson did not cite "any authority directly on point for the proposition that her actions must have conformed to a traditional notion of an assault," the claim had no merit.

Before this Court, Robinson relies on the common-law definition of assault and argues that it is reasonable to believe that the crime of simple assault requires a physical, contact-based assault. Robinson has not supported this claim with any citation to legal authority. Therefore, Robinson's claim is waived. ***See Commonwealth v. Miller***, 212 A.3d 1114, 1131 (Pa.Super. 2019) ("waiver of an issue results when an appellant fails to properly develop an issue or cite to legal authority to support his contention in his appellate brief") (citation omitted). Moreover, this claim fails on the merits. The plain statutory language merely requires that the defendant "cause . . . bodily injury," which is defined in a way as not to require contact. This claim fails.

*REAP*

Robinson maintains that the REAP statute implies that physical contact must occur, and because the Commonwealth failed to present any evidence that she physically touched the victim, the evidence was not sufficient to support the conviction.

The Commonwealth may sustain its burden for REAP if it proves that the defendant recklessly engaged in conduct that placed or may have placed another person in danger of death or serious bodily injury. **See** 18 Pa.C.S.A. § 2705. Recklessness may be proven when the Commonwealth shows that the defendant consciously disregarded "a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S.A. § 302(b)(3).

Like her argument for simple assault, Robinson relies on the common-law definition of recklessness and argues that it is reasonable to believe that the crime of REAP requires a physical, contact-based assault. Robinson's claim is waived because she has not supported her claim with any citation to legal authority. **See Miller**, 212 A.3d at 1131.

Even if Robinson had supported her claim, we would conclude that the issue lacks merit. The evidence in the light most favorable to the Commonwealth shows that Robinson placed the victim in danger of death or serious bodily injury by giving her methadone. Robinson did not consider any risk that could have resulted from her conduct of selling the victim

- 17 -

methadone and the eventual ingestion of the methadone by the victim. This sufficiently sustains the REAP conviction.

*PWID*

Robinson claims that the Commonwealth presented no evidence that she delivered a controlled substance to the victim while in the state of Pennsylvania. Robinson incorporates her argument regarding her conviction for DDRD.

An individual is guilty of PWID where the Commonwealth proves that the individual possessed a controlled substance with the intent to manufacture, distribute, or deliver it. **See** 35 P.S. § 780-113(a)(30).

As discussed above, the evidence was sufficient to show that Robinson sold methadone to the victim in Pennsylvania. Therefore, the evidence is sufficient to support the PWID conviction. Robinson's claim fails.

*Criminal Use of Communication Facility*

Robinson alleges that "[i]nasmuch as the evidence produced at trial was insufficient to support a finding that Robinson engaged in the delivery of a controlled substance," the evidence is also insufficient to support the crime of criminal use of a communication facility. Robinson's Br. at 50.

To prove the crime of criminal use of a communication facility, the Commonwealth must show that a person "use[d] a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title[.]" 18 Pa.C.S.A. § 7512(a). A communication facility includes a cell phone. **Id.** at § 7512(c); **see**

***Commonwealth v. Kane***, 210 A.3d 324, 327-28 (Pa.Super. 2019) (judgment of sentence affirmed for criminal use of a communication facility where defendant used cell phone to obtain child pornography).

The evidence was sufficient to sustain the conviction. Robinson used her cell phone to commit a felony, *i.e.*, PWID. Robinson's claim is meritless.

We vacate the sentence on the conviction of aggravated assault, but otherwise affirm the judgment of sentence.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judge Murray joins the memorandum.

Judge Stabile concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/2/2022