J-S24023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICKY LOWE | : | |
| | : | |
| Appellant | : | No. 1418 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 26, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000513-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICKY LOWE | : | |
| | : | |
| Appellant | : | No. 1419 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 26, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000517-2019

BEFORE:   PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 6, 2022**

Ricky Lowe appeals[1] from the judgments of sentence, entered in the

Court of Common Pleas of Chester County, following his convictions, at docket

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Lowe has filed separate notices of appeal in accordance with Pa.R.A.P. 341, and our Supreme Court's decision in **Commonwealth v. Walker**, 195 A.3d
*(Footnote Continued Next Page)*

No. 513-2019, of drug delivery resulting in death (DDRD),[2] criminal use of a communication facility (CUCF),[3] possession with intent to deliver (PWID),[4] possession of a controlled substance,[5] and, at docket No. 517-2019, PWID, and possession of a controlled substance. After careful review, we affirm.

On November 2, 2018, at approximately 7:00 a.m., Alanna Holt's parents discovered Holt slumped over at the foot of her bed, unresponsive. The parents called 9-1-1 but, after medical treatment, Holt was pronounced dead at 7:42 a.m. Police also responded to the 911 call. While present, the police discovered drugs and drug paraphernalia, including prescription bottles, a nasal syringe, and a substance suspected to be heroin.[6]

Detective Robert Bostick of the Tredyffrin Township Police Department examined Holt's unlocked iPhone and saw text messages between Holt and an unknown individual with a cell phone number ending in 9597 (Number 9597). Holt had arranged to purchase drugs from Number 9597. Number 9597 was

_____

969 (Pa. 2018). Additionally, both appeals raise identical claims, were consolidated in the trial court, and, for purposes of our disposition, we have consolidated the appeals *sua sponte*. **See** Pa.R.A.P. 513.

[2] 18 Pa.C.S.A. § 2506(a).

[3] **Id.** at § 7512(a).

[4] 35 P.S. § 780-113(a)(30).

[5] **Id.** at § 780-113(a)(16).

[6] Subsequent laboratory testing revealed the substance was 3-methylfentanyl, a schedule 1 narcotic. **See** 35 P.S. 780-104 (1)(ii)(23)(I). Additionally, laboratory testing revealed that Holt had died from using 3-methylfentanyl.

saved in Holt's phone as "Jon-2 Tindr Cute Big Dog." On November 2, 2018, at approximately 4:08 a.m., Holt received a text message from Number 9597 stating "it's there."

Detective Bostick began texting Number 9597 as Holt to arrange another drug deal. Detective Bostick and Number 9597 agreed to a drug drop on November 8, 2018. Detective Bostick placed counterfeit money inside of the mailbox at Holt's parents' house. At approximately 6:40 p.m., a dark colored vehicle stopped in front of the mailbox and turned off its headlights. A male exited the vehicle and approached the mailbox. He then returned to his vehicle and began driving away. He turned the headlights back on a short time later. As surveillance units followed the vehicle, Detective Bostick confirmed that the counterfeit money had been taken and replaced with a small plastic baggie containing a white powdery substance.[7] Based upon this information, the police stopped the vehicle and identified the driver as Lowe. Lowe was placed under arrest and the vehicle was searched. Police recovered a blue iPhone in the vehicle. Police confirmed that Number 9597 was associated with the blue iPhone.[8] The police also recovered a set of AirPods that were linked, via Bluetooth, to the blue iPhone.

At some point during the investigation, Detective Bostick prepared a report that purported to track Number 9597's movement via cell tower.

---

[7] Subsequent laboratory tests revealed it to be 3-methylfentanyl.

[8] Police discovered numerous text messages on the blue iPhone, which we discuss with greater detail *infra*.

Detective Bostick's report indicated that Number 9597 did not ping off of any cell towers in the Tredyffrin area. Detective Bostick concluded that this report ultimately helped disprove the Commonwealth's case and, subsequently, destroyed it. This report was not provided to Lowe or his attorney, and they did not become aware of it until trial. At trial, Lowe objected to the omission of this report, pursuant to **Brady**.[9] Ultimately, the trial court determined that Detective Bostick's report was not exculpatory, but, nevertheless, asked Lowe if he wanted a mistrial based upon its omission. Lowe declined a mistrial and, instead, asked for a missing evidence jury instruction.

Following the jury trial, Lowe was convicted as described above. The trial court ordered the preparation of a pre-sentence investigation report (PSI) and deferred sentencing. On June 26, 2020, the trial court conducted a sentencing hearing. At No. 513-2019, the trial court sentenced Lowe to a period of eight to twenty years in prison for his DDRD conviction, and a consecutive sentence of one to two years for his CUCF conviction. At No. 513-2019, the trial court sentenced Lowe to a consecutive period of five to ten years' imprisonment for his PWID conviction for an aggregate sentence of 14-32 years' incarceration.[10]

Lowe filed a timely post-sentence motion, which the trial court denied. Lowe filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b)

---

[9] **Brady v. Maryland**, 373 U.S. 83 (1963).

[10] Lowe received no further penalty at his remaining convictions.

- 4 -

concise statements of matters complained of on appeal. Lowe now raises the

following claims for our review:

> 1. Whether the Commonwealth violated the dictates of **Brady** [] when [] the Commonwealth failed to preserve and disclose exculpatory evidence to the [d]efense, specifically cell site data showing that the cell phone with the number ending in 9597 was not in Chester County at any point during the period surrounding the decedent's death, where the Commonwealth's theory of the case was that th[e] phone belonged to [Lowe], and that [Lowe] was principally and exclusively responsible for delivering drugs resulting in decedent's death on November 2, 2018.
>
> 2. Whether the trial court abused its discretion and committed reversible error in admitting [the Commonwealth's] late-disclosed expert[ ]testimony three days before trial . . . .
>
> 3. Whether the evidence presented against [Lowe] was sufficient to sustain his convictions for [DDRD] and [PWID] on November 2, 2018, where the sole evidence against him [was] comprised of unauthenticated text messages, and the Commonwealth's own witnesses testified that there was no evidence that [Lowe] was in Chester County, let alone at decedent's address[,] [] at any point during the period surrounding decedent's death.
>
> 4. Whether [Lowe]'s convictions for [DDRD] and [PWID] on November 2, 2018[,] were against the weight of the evidence, [where] there was no evidence that [Lowe] was in Chester County, let alone at decedent's address[,] [] at any point during the period surrounding the decedent's death, and the only way to . . . tie [Lowe] to the crime[s] would have been through a theory of accomplice liability, which the Commonwealth did not assert, and was explicitly prohibited from pursuing mid-trial.
>
> 5. Whether the trial court abused its discretion in imposing a manifestly unreasonable sentence.

Brief for Appellant, at 11-12.

In Lowe's first claim, he raises two sub-issues, which we address

separately. In his first sub-issue, Lowe argues that Detective Bostick

intentionally destroyed investigative evidence that demonstrated Lowe was not in the area at the time the drugs were delivered to Holt. Brief for Appellant, at 41-44. Lowe contends that Detective Bostick's first report indicated, based on Detective Bostick's trial testimony, that the blue T-Mobile phone did not ping off of any cell towers in the area and tended to disprove the Commonwealth's theory of the case. *Id.* As a result, Detective Bostick destroyed his report. *Id.* Lowe contends that the Commonwealth failed to provide him with the entirety of the T-Mobile data prior to trial. *Id.* He acknowledges that the Commonwealth ultimately provided him with the entire T-Mobile Excel sheet, but contends that the times shown in the T-Mobile data support Detective Bostick's original map, which tends to show that the blue iPhone was in Philadelphia at 4:00 a.m. on November 2, 2018, not in Tredyffrin Township. *Id.* Thus, Lowe asserts that Detective Bostick's initial report constitutes exculpatory evidence that was never disclosed to the defense in violation of *Brady*. *Id.* at 43-44.

Our Supreme Court has explained that

in order to establish a *Brady* violation, a defendant must show that: (1) the evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material in that its omission resulted in prejudice to the defendant. However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Williams***, 168 A.3d 97, 109 (Pa. 2017) (citations, quotation marks, and brackets omitted).

For clarity in addressing Lowe's sub-issues, we provide the following background of Detective Bostick's testimony, Chester County Detective Kristin Lund's testimony, and the arguments made by counsel surrounding the T-Mobile cell tower data. During Lowe's cross-examination of Detective Bostick, Detective Bostick testified that he had received GPS data for the blue iPhone Number 9597 from T-Mobile. N.T. Jury Trial Volume 3, 3/4/20, at 103. Detective Bostick testified that, on November 2, 2018, between the hours of midnight and 4:00 a.m., the blue iPhone "was out of the immediate area of Tredyffrin Township" and that it was in the Philadelphia area. ***Id.*** at 104. Detective Bostick also testified that, upon receipt of the GPS data, he had created a map on Google Maps, but did not save a copy of that map because it was not consistent with the Commonwealth's theory of the case. ***Id.*** at 103-12. Detective Bostick also stated that "the records indicate that the phone wasn't transmitting particular data at that time." ***Id.*** at 107.

On redirect, Detective Bostick testified that cell phones connect to cell towers that, in turn, collect data regarding those phones and their locations. ***Id.*** at 111. Detective Bostick further explained that when an iPhone communicates with another iPhone, a direct connection to a cell tower is unnecessary and, rather, the iPhones communicate directly with each other. ***Id.*** at 111-12. Detective Bostick testified that both Lowe and the victim had

iPhones, which made it impossible to map out where the blue iPhone was located, because it was not communicating with a cell tower between the hours of midnight and 4:00 a.m. *Id.*

Subsequent to Detective Bostick's testimony, Lowe introduced four pages of the T-Mobile cell phone records for the blue iPhone, which, upon review, did not include the location data of the phone calls from Number 9597. *Id.* at 103, 115, 123. The trial court ordered the Commonwealth to provide the entirety of the cell tower data it had received from T-Mobile. *Id.* at 123. Shortly thereafter, Lowe made an oral motion that the Commonwealth had violated *Brady* and requested that either all T-Mobile data records be stricken, or for additional time to review the T-Mobile data records. *Id.* at 123, 136.

Notably, the T-Mobile data records were recorded in Universal Time Clock (UTC) time, which requires a conversion to show the time in a specific time zone. *Id.* at 127. Regarding conversion to Eastern Daylight Time (EDT), counsel disagreed as to whether 4 hours needed to be added or subtracted from the UTC time to reflect an accurate time. *Id.* Lowe contended that 4 hours needed to be added to the UTC time and that doing so would show the blue iPhone in Philadelphia at 4:00 a.m. on November 2, 2018. *Id.* at 124-25. Based upon this interpretation, Lowe contended that the T-Mobile records and Detective Bostick's original map were exculpatory because, by adding 4 hours to UTC time, the text message to the victim "It's there" was sent at 4:08 a.m. on November 2, 2018. *Id.* By contrast, the Commonwealth contended that UTC time requires 4 hours to be subtracted, which placed the

blue iPhone in Philadelphia at 2:44 a.m. *Id.* at 125-30. Under the Commonwealth's theory, there is no data shown between the hours of 2:44 a.m. and 8:27 a.m., when the cell tower data again showed the blue iPhone in Philadelphia. *Id.* at 126.

Lowe countered that even if the phone records required 4 hours to be subtracted, the evidence was exculpatory. *Id.* at 131. However, the trial court disagreed and took judicial notice that the travel time via car from Philadelphia to Tredyffrin was approximately 30-40 minutes. *Id.* Nevertheless, the trial court asked Lowe if he wanted a mistrial based upon the Commonwealth's failure to provide the complete T-Mobile data. *Id.* at 136. Lowe specifically stated he did not want a mistrial. *Id.* at 136, 141-42. The trial court stated that it would give a missing evidence jury instruction. *Id.* at 141-42. Ultimately, the trial court recessed for the remainder of the day and permitted both parties to confer with experts regarding UTC time conversions. *Id.* at 142; N.T. Jury Trial Volume 4, 3/5/20, at 2.

The Commonwealth indicated that it intended to call Detective Lund to clarify the method of UTC time conversion. *Id.* at 11. Accordingly, the trial court, outside the presence of the jury, permitted defense counsel to cross-examine Detective Lund regarding her qualifications, testimony, and her report on UTC time conversion. *Id.* at 11-27. Subsequently, Detective Lund testified, before the jury, that UTC time conversion to EDT required 4 hours to be subtracted. *Id.* at 40. Detective Lund explained that the T-Mobile records showed the blue iPhone in Philadelphia at 6:44 a.m., UTC time. *Id.*

at 44-45. Detective Lund stated that by subtracting 4 hours, the blue iPhone was in Philadelphia at 2:44 a.m. EDT. *Id.* The next call placed by the blue iPhone was at 12:27 p.m. UTC time, or 8:27 a.m. EDT. *Id.* at 46. The 8:27 a.m. call also placed the blue iPhone in Philadelphia. *Id.* Detective Lund testified that there was no other data collected for the time period between 2:44 a.m. to 8:27 a.m. EDT on November 2, 2018, for the blue iPhone. *Id.* at 47. Ultimately, when charging the jury, the trial court gave the missing evidence jury instruction on the Commonwealth's failure to produce evidence.[11] N.T. Jury Trial Volume 5, 3/6/20, at 77-78.

_____

[11] The trial court stated as follows:

> There was also some discussion about the cellphone location records and map records. There was a question about what weight[,] if any[,] you should give to the failure of the Commonwealth to produce cellphone location records prior to and during this trial.

> If three factors are present and there's no satisfactory explanation for a party's failure to produce an item, the jury is allowed to draw a commonsense inference that . . . item would have been evidence unfavorable to that party.

> Three factors are necessary for that. First, the item was available to that party, not the other. In this case its conceded that the cellphone records were uniquely available to the Commonwealth. Second, it appears that the item contains or shows special information material to the issue.

> And third, the item would not be merely cumulative evidence. In this case the Commonwealth, the district attorney, had a legal responsibility to disclose these records to the defense prior to trial, and they failed to meet that responsibility.

*(Footnote Continued Next Page)*

Based upon the above, we cannot conclude that Detective Bostick's original map was exculpatory. Importantly, Detective Bostick's original map was incorrect because he calculated UTC time conversion by **adding** 4 hours rather than **subtracting** 4 hours. *See* N.T. Jury Trial Volume 3, 3/4/20, at 103-12; *see also* N.T. Jury Trial Volume 4, 3/5/20, at 11-27 (wherein Detective Lund explained proper UTC time conversion). Additionally, we agree with the trial court that Philadelphia is not so far from Tredyffrin as to make it impossible for the blue iPhone to travel from Philadelphia at 2:44 a.m. and arrive at Holt's house by 4:08 a.m. *See* N.T. Jury Trial Volume 3, 3/4/20, at 131 (trial court explaining Tredyffrin is approximately 30 to 40 minutes by car from Philadelphia); *see also* Trial Court Opinion, 11/1/21, at 7.[12] Moreover,

_____

> Therefore, if you find these three factors are present and there's no satisfactory explanation for the Commonwealth's failure to produce these records prior to and at this trial, you may infer, if you choose to do so, that it may have been evidence unfavorable to the Commonwealth.

*Id.* at 77-78.

[12] Furthermore, to the extent that Lowe contends he is entitled to a new trial based upon the Commonwealth's initial failure to provide the full T-Mobile data prior to trial, we conclude that such claim is waived. It is clear from the record that the trial court specifically asked Lowe if he wanted a mistrial based upon the Commonwealth's failures to disclose evidence, exculpatory or not. *See* N.T. Jury Trial Volume 3, 3/4/20, at 136, 141-42. Lowe **declined** the offer of a mistrial and specifically stated he did not want one. *Id.* Rather, Lowe acquiesced to the Commonwealth's suggestion of presenting expert testimony, via Detective Lund, regarding the UTC time conversion. *See* N.T. Jury Trial Volume 3, 3/4/20, at 136, 141-42. Thus, to the extent Lowe seeks a new trial based upon the Commonwealth's failure to disclose the T-Mobile
*(Footnote Continued Next Page)*

we emphasize that because Lowe and Holt both used cell phones, cell tower pings are not solely dispositive of this issue in the instant case. As Detective Bostick testified, iPhones utilize an internal messaging service that can circumvent the need for cell towers. *See* N.T. Jury Trial Volume 3, 3/4/20, at 111-13, 125-30 (wherein Detective Bostick testified regarding iPhone internal messaging services and that iPhone-to-iPhone communications do not necessarily utilize cell towers). Accordingly, Lowe is not entitled to relief on his first sub-issue.

In Lowe's second sub-issue, he asserts that even if there was not a *Brady* violation, the trial court erred in admitting the text messages because they were not properly authenticated and were, therefore, hearsay evidence that did not fall under an exception. Brief for Appellant, at 44-53. Lowe contends that the Commonwealth presented no direct evidence that Lowe owned or used the blue T-mobile phone. *Id.* at 50-53. Lowe acknowledges that the Commonwealth may authenticate text messages by wholly circumstantial evidence, but nevertheless contends that the Commonwealth's circumstantial evidence was insufficient to establish Lowe's use or ownership of the phone. *Id.* Additionally, Lowe contends that the unauthenticated text messages are necessarily hearsay without an exception that the trial court

_____

data prior to trial, we conclude this claim is waived. *See* Pa.R.A.P. 302(a) (issues not raised before trial court waived on appeal); *see also Commonwealth v. Hannibal*, 156 A.3d 197, 209-10 (Pa. 2016) (*Brady* claims subject to waiver).

- 12 -

erred in admitting and that the errors amount to reversible error. *Id.* at 54-56.

We adhere to the following standard of review:

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. . . . Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

*Commonwealth v. Clemons*, 200 A.3d 441, 475 (Pa. 2019) (citations omitted).

Pennsylvania Rule of Evidence 901 requires that, for electronic communications, authentication is required prior to admission of evidence. *See Commonwealth v. Talley*, 235 A.3d 42, 59 (Pa. Super. 2020). Rule 901 provides, in relevant part, as follows:

> **(a) In General**. Unless stipulated, to satisfy the requirement of **authenticating or identifying** an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> **(b) Examples**. The following are examples only--not a complete list--of evidence that satisfies the requirement:
>
>           \*    \*    \*
>
>     (11) *Digital Evidence*. To connect digital evidence with a person or entity:
>
>           \*    \*    \*
>
>       (B) circumstantial evidence such as:
>
>          (i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at a relevant time when corroborated by circumstances **indicating authorship**.

\* \* \*

Pa.R.E. 901(b)(11) . . . "Digital evidence," as used in this rule, is intended to include a communication, statement, or image existing in an electronic medium. This includes emails, **text messages**, social media postings, and images. The rule illustrates the manner in which digital evidence may be attributed to the **author**.

The proponent of digital evidence is not required to prove that no one else could be the author. **Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author**. []

\* \* \*

Circumstantial evidence of identifying content under Pa.R.E. 901(b)(11)(B)(i) may include self-identification or other distinctive characteristic, including a display of knowledge only possessed by the author. Circumstantial evidence of content may be sufficient to connect the digital evidence to its author.

Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication of authorship of digital evidence under Pa.R.E. 901(b)(11)(B)(ii). . . . However, this evidence is probative in combination with other evidence of the author's identity.

Pa.R.E. 901(a), (b)(11)(i-ii), cmt (emphasis added).

"[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person[.]" ***Commonwealth v. Mosley***, 114 A.3d 1072, 1081 (Pa. Super. 2015). Generally, evidence that the cell phone on which the text

messages appear belongs to the defendant and was in his possession in close temporal proximity to the time of the messages, coupled with an absence of evidence that others used that phone, and some content on the cell phone that is consistent with evidence concerning the defendant, is sufficient to authenticate messages as having been sent by the defendant. *See Commonwealth v. Bowens*, 265 A.3d 730, 746 (Pa. Super. 2021) (en banc).

We observe that there are several sets of text messages at issue that span from approximately October 15, 2018 to November 8, 2018. On October 15, 2018, Number 9597 sent a text message to Holt's phone that stated, "Yo Lana," to which Holt responded, "Yo! This Fresh?" *See* Commonwealth Exhibit 1. Number 9597 goes on to identify itself as "Fresh" and says that he had just recently been released from prison. *See id.* "Fresh" then states "I'm given out all str8 hammer for the next two three weeks str8 just to get my phone back how its spose to b cuz I don't know wat my yungin was given people while I was booked so get it while u can if u want something k." *Id.* The Commonwealth presented, to the trial court, Ricky Lowe's docket sheets that detailed his release from Delaware County Prison on October 3, 2018. *See* Commonwealth Exhibit 2.

Subsequently, on October 19, 2018, Holt responded "Shit man that sucks … You got Facebook or something that I can message you on? I don't wanna be textin." *See* Commonwealth Exhibit 9. "Fresh" states that his name on Facebook is "Ricky Lowe." *See id.* During the course of Detective Bostick's

investigation, he went to Ricky Lowe's Facebook profile page. The Commonwealth introduced Exhibits 10A and 10B, which, respectively, are a photograph of Ricky Lowe in high school and his Facebook profile picture. *See* Commonwealth Exhibits 10A, 10B. The Commonwealth also introduced various Facebook communications in which the "Ricky Lowe" profile referred to itself as "Fresh." *See* Commonwealth Exhibits 11, 12.

On November 1, 2018, Holt messaged "Fresh" and asked to arrange an exchange of drugs later that evening. *See* Commonwealth Exhibit 8. Holt told "Fresh" that she would put the "stuff in the mailbox in like 20 min." *Id.* On November 2, 2018, in the early morning Holt again messaged "Fresh" and provided him with an address. *See id.* "Fresh" then responded, "It's there." *See* Commonwealth Exhibit 12.

Additionally, on November 1, 2018, Number 9597 texted to a different phone number "[o]nly way I could is if u came down cuz I got court in the a.m." *See* Commonwealth Exhibit 4. Number 9597 elaborated that he was currently on West Stiles Street and discussed going to sleep early so that he could be on time for court the next day. *Id.* Commonwealth Exhibit 4 details additional conversations regarding Number 9597's court dates. *See id.*

At trial, the Commonwealth introduced Commonwealth Exhibit 5, which was a subpoena, signed by Ricky Lowe, that shows Ricky Lowe appeared in the Philadelphia Court of Common Pleas on November 2, 2018, at 11:06 a.m. *See* Commonwealth Exhibit 5. Relevantly, on November 2, 2018, at 11:04 a.m., Number 9597 sent an outgoing text message stating, "I'm bouta b

leaving in a sec got another court day tho." ***See id.*** The subpoena also lists Lowe's address as West Stiles Street in Philadelphia. ***Id.*** Lowe told detectives that his address was on Stiles Street in Philadelphia. ***See*** Commonwealth Exhibit 6.

At some point in the early morning of November 2, 2018, Holt passed away from overdosing on drugs. At approximately 12:0 p.m. EDT that same day, Detective Bostick began using Holt's phone to text "Fresh" at Number 9597. ***See id.***; ***see also*** N.T. Jury Trial Volume 1, 3/02/20, at 203-04. On November 7, 2018, Detective Bostick asked if "Fresh" could "come this way tomorrow" and bring the same thing as last time. ***See*** Commonwealth Exhibit 12. "Fresh" responds affirmatively, and Detective Bostick and "Fresh" discussed payment in pills. ***Id.***

On November 8, 2018, Detective Bostick and "Fresh" resumed texting and discussed what types of pills Detective Bostick was using to pay. ***See*** Commonwealth Exhibits 8, 12. Based upon the amount and type of pills Detective Bostick offered, "Fresh" responded that he will "put some extra in there." ***Id.*** Detective Bostick informed "Fresh" that the payment was in the mailbox. ***Id.*** Subsequently, the police observe a vehicle drive up to the mailbox, and then drive away. After stopping and searching the vehicle, the officers identified the driver as Ricky Lowe, who was in possession of the blue iPhone linked to Number 9597.

In conclusion, it is clear from our review that the Commonwealth authenticated the above-described text messages as having been authored by

Ricky Lowe. We note that it appears someone else was using Number 9597 prior to October 3, 2018; however, on October 15, 2018, the individual utilizing Number 9597 begins referring to themselves as "Fresh." ***See*** Commonwealth Exhibit 1. "Fresh" explained that he had been out of touch due to a recent incarceration. ***See id.*** The Commonwealth presented evidence that Ricky Lowe had recently been released from prison. ***See*** Commonwealth Exhibit 2. Additionally, "Fresh" explained that he has a Facebook page under the name "Ricky Lowe." ***See*** Commonwealth Exhibit 9. The Commonwealth presented photographs taken from the "Ricky Lowe" Facebook profile, which were later used to identify Lowe as the defendant. ***See*** Commonwealth Exhibit 10A; Commonwealth Exhibit 10B. Furthermore, in various communications on his Facebook page, Ricky Lowe identified himself as "Fresh." ***See*** Commonwealth Exhibit 11; Commonwealth Exhibit 12. "Fresh" then discussed the drug deals with Holt, and confirmed that he dropped off drugs in the mailbox of Holt's home in the early morning of November 2, 2018. ***See*** Commonwealth Exhibit 4. Number 9597 went on to text other phone numbers and detailed that he has a court date in the morning of November 2, 2018, which Lowe appeared for, and signed a subpoena. ***See id.***; Commonwealth Exhibit 5. Mere minutes before signing that subpoena, Number 9597 texted another number that he was almost done at court, but had another court date coming up. ***See*** Commonwealth Exhibit 5. The Commonwealth presented the signed and dated subpoena to the trial court. ***See id.*** That same subpoena details Lowe's address as West Stiles Street,

which matches what he told detectives in his interview. *See id.*; *see also* Commonwealth Exhibit 6. Additionally, in the text messages exchanged between Detective Bostick and "Fresh," "Fresh" did not ask what amount of drugs to deliver, what type of drugs to deliver, and did not ask where the drugs needed to be delivered, which tends to show that "Fresh" was familiar with delivering drugs to Holt. *See* Commonwealth Exhibit 8; Commonwealth Exhibit 12; *see also* N.T. Jury Trial Volume 1, 3/02/20, at 204-05; *id.*, 3/04/20, at 48. Ultimately, the police recovered the blue iPhone associated to Number 9597 in Lowe's possession.

Based upon the foregoing, we conclude that the Commonwealth properly authenticated the text messages, via circumstantial evidence, and that the trial court did not err in admitting the messages into evidence. *See Bowen*, *supra*; *Mosley*, *supra*; *see also* Pa.R.Crim.P. 901. Moreover, we conclude that because the text messages were properly authenticated, Lowe's hearsay challenge is of no moment. *See Talley*, *supra*; *see also Commonwealth v. Koch*, 39 A.3d 996, 1006 (Pa. Super. 2011) (authentication is prerequisite to admissibility; where text messages properly authenticated, text messages subject to party opponent hearsay exception). Accordingly, Lowe is entitled to no relief on this claim.

In Lowe's second issue, he asserts that the trial court erred in denying his motion *in limine* seeking to exclude the Commonwealth's late-disclosed expert opinion. Brief for Appellant, at 56-59. Lowe argues that the expert testimony from Detective Zachary Moyer, which established that AirPods can

only be Bluetooth-connected to one iPhone at a time, was wholly irrelevant and unfairly prejudicial.[13]  ***Id.***  In particular, Lowe argues that the testimony could only establish that his AirPods were connected to the blue T-mobile iPhone on November 8, 2018, when the police arrested him, but not on November 2, 2018, when the drugs resulting in decedent's death were delivered.  ***Id.***

We observe that this challenge is waived because Lowe did not make this objection before the trial court.  Our review reveals that Lowe objected to Detective Moyer's testimony because he "d[idn']t have any way of either evaluating or contesting that evidence . . . I have no idea how [Detective Moyer] came to that conclusion."  N.T. Jury Trial Volume 1, 3/2/20, at 51.  In response, the trial court agreed that the Commonwealth disclosed Detective Moyer's testimony late and offered Lowe either a continuance or a hearing outside the presence of the jury regarding Detective Moyer's credentials and expert testimony.  ***Id.*** at 53-54.  Lowe declined a postponement and opted to take the trial court's second suggestion.  ***Id.*** at 54-56.

Based upon our review of the record Lowe did not object to Detective Moyer's testimony on the basis of relevance, jury confusion, or prejudice, which he now does for the first time on appeal.  Additionally, Lowe does not direct us to anywhere in the record where he preserved this claim.  It is well-

_____

[13] Relevantly, in an attempt to prove Lowe's ownership of the blue iPhone, the Commonwealth sought to introduce Detective Moyer's testimony regarding the AirPods to demonstrate that AirPods can only be connected to a single iPhone at a time.

settled that claims cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a) (issues not raised before trial court are waived on appeal); *see also Commonwealth v. Williams*, 900 A.2d 906, 909 (Pa. Super. 2006) ("[I]ncluding an issue in a [Rule 1925(b) statement] does not revive issues that were waived in earlier proceedings."). Accordingly, we conclude that Lowe has waived this challenge.

In his third issue, Lowe argues that the evidence was insufficient to convict him of DDRD. Brief for Appellant, at 59-64. In particular, Lowe argues that the Commonwealth failed to prove that Lowe had the requisite *mens rea* because it relied on the Commonwealth's assertion that Lowe "knew decedent's exact order." *Id.* at 62-63. Lowe argues that if he "knew" her order, "then it is impossible to also find recklessness around causing her death; if [Lowe] gave her the same product every time, there is no reason [for Lowe] to believe that she would have died this time." *Id.* at 63. Lowe further contends that the Commonwealth's witnesses explained that decedent "likely" had a tolerance to fentanyl, and therefore improperly concluded that it caused her death. *Id.* at 63-64.

Lowe challenges the sufficiency of the evidence, for which we adhere to the following standard of review:

> [W]hether[,] viewing all the evidence admitted at trial, in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The Crimes Code defines DDRD as follows:

**§ 2506. Drug delivery resulting in death**

**(a) Offense defined.--**A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section(a)(14) or (30) or the . . . Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a). The crime of DDRD "consists of two principal elements: '(i) [i]ntentionally administering, dispensing, delivering, giving prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by ('resulting from') the use of that drug.'" *Commonwealth v. Kakhankham*, 132 A.3d 986, 991-92 (Pa. Super. 2015). This Court has previously stated:

[T]he applicable *mens rea* for the crime of [DDRD] is two-fold. First, the delivery, distribution or sale of the contraband must be intentional. [*Id.* at 992.] Second[,] the actual death must be the reckless result of the actions of the defendant. *Id.* at 995. As such, the crime is an intentional act in providing contraband, with a reckless disregard of death from the use of the contraband.

*Commonwealth v. Carr*, 227 A.3d 11, 16-17 (Pa. Super. 2020).

Instantly, the trial court addressed this issue as follows:

Text messages from [the blue iPhone] clearly showed that the user of that phone was the person who delivered the drugs. This is shown by the text message stating, "it's there," and the text message indicating that the person did not see anyone when the drugs were delivered. The Commonwealth [introduced evidence] that Number 9597 belonged to [Lowe] by introducing exhibits, including pictures, docket sheets, court filings, maps, and social media postings that [] linked [Lowe] to th[e] phone. Moreover, the fact that the same, rare drugs were delivered to [the victim]'s residence, were packed in the same way[,] and [] were delivered in the same manner also leads to the conclusion that the same person delivered the drugs both times. In addition, when Detective Bostick set up the drug deal on November 8, 2018, he did not tell the person he was communicating with what kind of drugs he wanted or the amount he wanted. [Detective Bostick] also did not give the person an address or directions on how to get there, nor did he tell them where to leave the drugs. [Rather, Detective Bostick] was intentionally vague so that the delivery on November 8, 2018[,] would be consistent with the delivery on November 2, 2018[.] The similarities between the two sales leads to the conclusion that the same person was responsible for both deliveries.

[Additionally, the Commonwealth introduced] a video of the November 8, 2018 drug delivery [] at trial. A review of the video makes it clear that [Lowe], who was caught re[d]-handed on November 8, 2018, had been to [Holt's residence] before and had delivered drugs in the same manner previously.

Trial Court Opinion, 11/1/21, at 8-9.

Upon review of the record, we agree with the trial court that the Commonwealth presented sufficient evidence to sustain Lowe's conviction of DDRD. *See id.*; *see also Smith*, *supra*. The Commonwealth's evidence pertaining to the text messages from the blue iPhone, proof of Lowe's authorship of those messages, and the similarities of details surrounding the

November 2nd and 8th deliveries, combined to demonstrate that Lowe delivered the substance to Holt, who ultimately died from its use. *See* Trial Court Opinion, 11/1/21, at 8-9. Thus, the evidence demonstrated that Lowe intentionally delivered a controlled substance, 3-methylfentanyl, to Holt, that 3-methylfentanyl caused her death, and that her death was the reckless result of Lowe's actions. *See Carr*, *supra*; *see also Commonwealth v. Storey*, 167 A.3d 750, 757-58 (Pa. Super. 2017) (dangers of heroin are so great and well-known that sale of heroin itself is sufficient to satisfy recklessness requirement when death occurs as result of sale); *Commonwealth v. Burton*, 234 A.3d 824, 833 (Pa. Super. 2020) (finding sufficient evidence for DDRD where defendant intentionally delivered fentanyl that caused victim's death). We conclude, similarly to *Storey* and *Burton*, that the dangers of fentanyl are so great—even greater than those of heroin—that a sale of fentanyl resulting in death must, likewise, satisfy the recklessness requirement. *See Storey*, *supra*. Accordingly, Lowe is not entitled to relief on this claim. *See Smith*, *supra*.

In his fourth issue, Lowe argues that his convictions are against the weight of the evidence. Brief for Appellant, at 64-66. Lowe argues that his conviction based on missing cell site data, decedent's previous history of drug use, and lack of evidence that Lowe actually delivered the drugs on November 2, 2018, must shock the conscience and mandate reversal. *Id.* at 65. Additionally, Lowe argues that if he "acted in the manner alleged by the Commonwealth, then he could not have recklessly caused her death." *Id.*

- 24 -

We conclude that Lowe has waived this claim for failure to raise it before the trial court. *See* Pa.R.A.P. 302(a). It is well-settled that a weight claim must be raised before the trial court, generally in a post-sentence motion or orally on the record. *See* Pa.R.Crim.P. 607; *see also Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (appellant's failure to raise weight claim before trial court results in waiver). Instantly, Lowe's weight claim makes its first appearance in his Rule 1925(b) statement and, thus, it is waived for our review.[14] *See Williams*, 900 A.2d at 909.

In Lowe's fifth claim, he challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. *See Commonwealth v. Austin*, 66 A.3d 798, 807-08 (Pa. Super. 2013). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly

---

[14] Moreover, we note that even if Lowe had not waived this weight claim, his brief merely re-argues his sufficiency claim, which we addressed above. Sufficiency and weight claims are distinct and, thus, we would decline to address his claim on this basis as well. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (sufficiency of evidence claims are distinct from weight of evidence claims; case explains differences between sufficiency and weight challenges); *see also Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019) (appellant waived challenge to weight of evidence where appellant's brief conflated weight and sufficiency claims and did not otherwise develop weight claim).

preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Lowe has filed a timely notice of appeal, post-sentence motion, and properly included a Rule 2119(f) statement in his brief. Accordingly, we must determine whether Lowe has raised a substantial question.

"We review an appellant's Rule 2119(f) statement to determine whether a substantial question exists." **Commonwealth v. Ahmad**, 961 A.2d 884, 886-87 (Pa. Super. 2008). The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. **Id.** This Court "cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." **Commonwealth v. Christine**, 28 A.3d 1, 10 (Pa. Super. 2013).

It is well-settled that this Court does not accept bald assertions of sentencing errors. **See Commonwealth v. Malovich**, 903 A.2d 1257, 1252 (Pa. Super. 2006). When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus

on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Ahmad*, 961 A.2d at 886-87 (citation omitted). A Rule 2119(f) statement is inadequate when it "contains incantations of statutory provisions and pronouncements of conclusions of law[.]" *Commonwealth v. Bullock*, 868 A2.d 516, 528 (Pa. Super. 2005) (citation omits).

Instantly, Lowe's Rule 2119(f) statement falls short of our requirements and, accordingly, we conclude that Lowe has failed to present a substantial question for our review. Lowe has presented five questions in his Rule 2119(f) statement. We note that his first and third questions are duplicates, and his second and fourth questions are duplicates. Further, Lowe's Rule 2119(f) statement presents little more than legal conclusions and bald assertions of the trial court's purported abuse of discretion. *See* Brief for Appellant, at 18-19; *see also Malovich*, *supra*; *Bullock*, *supra*. Indeed, Lowe does not cite to the Sentencing Code or the fentanyl sentencing guidelines to support a challenge to his sentence. Nor does Lowe's Rule 2119(f) statement discuss what factor or factors the trial court allegedly did not consider. Brief for Appellant, at 18-19. Additionally, we observe that Lowe's final question fails to raise a substantial question, because a general challenge to the concurrent or consecutive nature of sentences does not, on its own, raise a substantial question for this Court to review. *See Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005) ("[I]mposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court,

and a challenge to the imposition of consecutive sentences does not raise a substantial question."). Thus, we conclude that Lowe has waived his challenges to the discretionary aspect of his sentence.[15]

Based upon the foregoing, Lowe is not entitled to relief on any of his claims. Accordingly, we affirm Lowe's judgment of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2022

---

[15] Moreover, even if Lowe had not waived his challenges or raised a substantial question, we would afford him no relief. In addressing Lowe's sentencing claims, the trial court concluded that Lowe delivered 3-methylfentanyl to Holt and Lowe knew he was delivering 3-methylfentanyl and, thus, properly sentenced Lowe under the fentanyl sentencing guidelines. *See* Trial Court Opinion, 11/1/21, at 13-14. Additionally, the trial court expressly stated that it had considered the PSI. *See* N.T. Sentencing Hearing, 6/26/20, at 1-2, 33-41 (trial court stating it considered PSI and detailing reasons for sentence); Trial Court Opinion, 11/1/21, at 13; *see also Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (where sentencing court considered PSI, it is presumed court "[was] aware of relevant information regarding the defendant's character and weighed those considerations along with the mitigating statutory factors").